■ In the Matter of BURMA BIBAS, INC., Respondent, v TOYOSHIMA AND Co., INC., Appellant.—Judgment, Supreme Court, New York County, entered September 6, 1977, which granted Burma's application for an order permanently staying arbitration and denying Toyoshima's cross motion to compel arbitration, unanimously reversed, on the law, and vacated petition denied and cross motion granted, with $40 costs and disbursements of this appeal to appellant. Burma and Toyoshima are merchants in the textile industry. Burma is a manufacturer and distributor of garments, Toyoshima is an importer. On or about July 7, 1976, Burma ordered 1,600 dozen sweaters from Toyoshima. In a form labeled "sales contract", dated July 7, 1976, Toyoshima confirmed the sale. The name of Toyoshima's president, Asano, was typed on the "contract" but he did not sign that form. On the face of the "contract", the following clause appeared: "This order is and shall be subject to the terms herein stated and those on the reverse side hereof, INCLUDING THE PROVISION FOR ARBITRATION, all of which are hereby accepted by the Buyer, or when Buyer has retained possession hereof for a period of ten (10) days from date of receipt, or when Buyer has accepted delivery of all or any part of the goods herein described. No modification of this contract shall be enforced unless in writing signed by the Seller." Another clause on the face of the "contract" provides that: "All controversies arising out of, or relating to this contract, or any modification thereof, shall be settled by arbitration in the City of New York, in accordance with the Arbitration Rules of the General Arbitration Council of the Textile Industry". On the face of the "contract", there also appeared a provision reading: "This is subject to approval sample." In the period between July 7, 1976 and December 8, 1976, there was extensive commercial activity between these parties. Burma accepted and paid for certain samples and rejected others. There was a constant flow of forms and correspondence relating to changes in styles and colors. From time to time, letters were mailed by Toyoshima to confirm the bulk shipment dates. In a letter dated December 8, 1976, Burma canceled the subject order because the samples were allegedly not up to specifications. In January of 1977, Toyoshima sought to arbitrate the dispute. CPLR 7501 only requires that an agreement to arbitrate be in writing. That section does not require that such agreement be signed by the party to be bound (Trafalgar Sq. v Reeves Bros., 35 AD2d 194, 196). Hence, Burma could be bound by the July 7, 1976 "contract" even though such form was not signed by one of its authorized representatives. It should be emphasized that arbitration clauses are commonly used in the textile industry (Matter of Gaynor-Stafford Ind. [Mafco Textured Fibers], 52 AD2d 481, 485). In fact, the prior sales contracts between these parties contained arbitration clauses. Burma does not contend that it was unaware that the instant "contract" contained an arbitration clause. In any event, such a contention on Burma's part would be without avail in this proceeding since the "reverse side" arbitration clause was prominently called to Burma's attention on the face of the form (Lehigh Val. Inds. v Armtex, Inc., 53 AD2d 582). By failing to

object to the contract within 10 days and by accepting the shipments of samples over a series of months, Burma thereby became bound by all the terms of the "contract", including the arbitration provision. *(Trafalgar Sq. v Reeves Bros., supra,* p 195; *Lehigh Val. Inds. v Armtex, Inc., supra.)* The meaning of the provision, "This is subject to approval sample", is an issue that should be resolved at arbitration. So, too, the arbitrator should decide the question of whether Toyoshima breached the contract by failing to provide samples that complied with the specifications. Concur—Murphy, P. J., Evans, Lane and Markewich, JJ.