**ASTRA FOOTWEAR INDUSTRY,**
Petitioner,

v.

**HARWYN INTERNATIONAL,
INC., Respondent.**

No. 77 Civ. 3509.

United States District Court,
S. D. New York.

Jan. 10, 1978.

Murray A. Gordon, G. Oliver Koppell, Murray A. Gordon, P.C., New York City, for petitioner.

Richard L. Blumenthal, Schlanger, Blumenthal & Lynne, P.C., New York City, for respondent.

## MEMORANDUM OPINION AND ORDER

PIERCE, District Judge.

Petitioner Astra Footwear brings this action to compel arbitration to resolve a contract dispute which has arisen between the parties. Petitioner is a footwear manufacturer located in Zagreb, Yugoslavia;[1] respondent is a footwear distributor with offices in New York.

In May, 1975 the parties entered into an agreement under which petitioner agreed to sell and deliver and respondent agreed to purchase 13,400 pairs of shoes. Petitioner alleges that it has shipped footwear pursuant to the agreement, but that respondent has refused to pay for invoices totalling $115,820.00 covering said shipments.

Petitioner seeks to compel arbitration before the International Chamber of Commerce, a body which exists for the purpose of settling international business disputes. In so requesting, petitioner relies on paragraph 12 of the contract, which provides:

"12. *Disputes* : For all claims of disputes arising out of this agreement which could not be amicably settled between the parties, is competent the arbitrage for export trade at the Federal Chamber of Commerce in Beograd. [sic] In the case that the buyer is accused, the Chamber of Commerce in New York is competent."

It is petitioner's position that in designating the "Chamber of Commerce in New York," the parties were referring to the International Chamber of Commerce (ICC), which is based in Paris and has offices in New York.[2]

Petitioner further indicates that should the Court determine that the ICC was not agreed to, it stands ready to arbitrate before any arbitrator appointed by the Court, including the American Arbitration Association.

In reply, respondent maintains that the agreement refers to and the parties intended the New York Chamber of Commerce (NYCC) to arbitrate disputes arising thereunder. In support of its position, respondent asserts that prior to entering into this agreement it had never before done business with a Communist concern, and therefore was careful to choose an arbitration body—NYCC—that would best protect its interests.

It appears that the New York Chamber of Commerce ceased to arbitrate disputes in April, 1973 when it merged to become the New York Chamber of Commerce & Industry (NYCCI). It is respondent's position that the naming of NYCC was "an integral

1. Respondent has raised the question of whether petitioner is the proper party to bring this action. In his affidavit, Mr. Adolf Belec explains that "Astra Footwear Factory" which appears on the contract is the same party as "Astra Footwear Industry," but that the latter name is a more precise translation of the Yugoslav. The Court is satisfied that the petitioner is the party named in the contract.

2. Petitioner in fact approached the International Chamber of Commerce in January 1977 and requested arbitration before that body. ICC denied petitioner's request since it was not the organization specified in the agreement and respondent refused to consent to ICC jurisdiction.

part of the substantive rights bargained for by Harwyn," and that in light of NYCCI's inability to hear the dispute, the agreement to arbitrate has been vitiated and the petition must be dismissed.

Respondent argues that the question of whether the agreement was to arbitrate in general or was to arbitrate before a particular organization is an issue mandating a jury trial under 9 U.S.C. § 4 (1970) of the Federal Arbitration Act.[3] To support this position, respondent cites a New York case,[4] *Laboratorios Grossman, S.A. v. Forest Laboratories, Inc.,* 31 A.D.2d 628, 295 N.Y.S.2d 756 (1st Dep't 1968) which dealt with a closely analogous fact situation. There the parties agreed to arbitrate "in accordance with the rules and procedures of the Pan-American Arbitration Association", an organization which had never in fact existed. A petition was brought to stay arbitration. The Court, in ordering a hearing to determine the parties' intent, stated: "the issue to be decided is whether the dominant purpose of the agreement was to settle disputes by arbitration, rather than the instrumentality through which arbitration should be effected." *Id.,* 295 N.Y.S.2d at 757. However, the intent of the parties was necessary only to determine the appropriate arbitrator to appoint.

Petitioner, on the other hand, has cited the case of *Delma Engineering Corp. v. K & L Construction Co.,* 6 A.D.2d 710, 174 N.Y.S.2d 620 (2d Dep't 1958), *aff'd,* 5 N.Y.2d 852, 181 N.Y.S.2d 794, 155 N.E.2d 675 (1958), which has a factual situation bearing greater resemblance to the present case than does *Laboratorios.* The contract in *Delma* provided for arbitration before the New York Building Congress which refused to take the case because it had discontinued arbitration procedures and neither disputant was a member of the Building Congress. The Appellate Division rejected the argument that since the provisions for arbitration had failed, the parties were relegated to their remedies in court. Instead, the court held that there was a dominant intent to arbitrate and not merely to arbitrate before particular arbitrators. Without requiring a trial on the question of intent, the appellate court directed the lower court to appoint three arbitrators of its own selection, pursuant to the New York statute.[5]

The Court of Appeals for this Circuit has stated that what a party must show in order to place the making of an arbitration agreement in issue or to make a genuine issue entitling a party to a trial by jury is "an unequivocal denial that the agreement had been made . . . and some evidence should have been produced to substantiate the denial." *Interocean Shipping Co. v. National Shipping & Trading Corp.,* 462 F.2d 673, 676 (2d Cir. 1972), quoting *Almacenes Fernandez, S.A. v. Golodetz,* 148 F.2d 625, 628 (2d Cir. 1945). In *Interocean,* the party opposing arbitration denied the very existence of the contract that contained the arbitration clause. In the present case, respondent's main objection to

---

**3.** 9 U.S.C. § 4 (1970) provides in pertinent part: "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . . Where such an issue is raised, the party alleged to be in default may . . . demand a jury trial of such issue."

**4.** The New York statutes relevant to this inquiry are N.Y.C.P.L.R. §§ 7503 & 7504 (McKinney 1963). They are similar to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. (1970) in providing for a trial where there is a question regarding the making of an agreement to arbitrate and in providing for Court appointment of a substitute arbitrator. However, the federal statute, 9 U.S.C. § 4, provides for trial by jury if one is demanded.

**5.** Although the Court of Appeals for this Circuit has consistently held that federal rather than state law controls in determining the validity of a contract to arbitrate, *Coenen v. R. W. Pressprich & Co.,* 453 F.2d 1209 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402 (2d Cir.), *app. dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960), state law is particularly helpful in this situation where the state and federal arbitration statutes are fairly similar and there is no apparent federal precedent. Cf. *Lea Tai Textile Co. v. Manning Fabrics, Inc.,* 411 F.Supp. 1404 (S.D.N.Y.1975) (Court looked to Uniform Commercial Code in determining the question of existence of contract to arbitrate.)

arbitration appears to be fear that the arbitrator would not support American business interests.[6] Respondent has not unequivocally denied that an arbitration agreement was made in the present case. From the language of the contract and the position of the parties, the Court finds that an arbitration agreement was made and that the making of such agreement is not in issue here.

■ The Court further finds that by the terms "Chamber of Commerce in New York" the parties intended the New York Chamber of Commerce, and not the International Chamber of Commerce which has an office in New York. Respondent has pointed out that even the petitioner when seeking arbitration applied first to the New York Chamber of Commerce and Industry. In addition, the International Chamber of Commerce when approached as an arbitrator also suggested that the parties try the New York Chamber of Commerce.

Since the New York Chamber of Commerce no longer arbitrates and the International Chamber of Commerce was not specified in the agreement, petitioner next requested that the Court appoint an arbitrator pursuant to 9 U.S.C. § 5 (1970) which provides:

"If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, *or if for any other reason there shall be a lapse in the naming of an arbitrator* or arbitrators or umpire, *or in filling a vacancy,* then upon the application of either

party to the controversy *the court shall designate and appoint an arbitrator* or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator." (Emphasis supplied.)

However, respondent contends that "[w]hile there is a strong policy favoring arbitration . . . it remains a creature of contract. [The Court should] not impose its will on parties whose intentions are in clear conflict on this important issue." *Lea Tai Textile Co. v. Manning Fabrics, Inc.,* 411 F.Supp. 1404, 1407 (S.D.N.Y.1975). But respondent's reliance on *Lea Tai* is misplaced. In that case, Judge Duffy held that there was no agreement to arbitrate since buyer and seller had exchanged forms with "hopelessly" inconsistent arbitration terms. In the present case, as has been noted, it is undisputed that the parties did agree to arbitrate albeit before the "Chamber of Commerce in New York."

■ The Court finds that 9 U.S.C. § 5 was drafted to provide a solution to the problem caused when the arbitrator selected by the parties cannot or will not perform. In view of the federal policy to construe liberally arbitration clauses and to resolve doubts in favor of arbitration, *Coenen v. R. W. Pressprich & Co.,* 453 F.2d 1209 (2d Cir.), *cert. denied,* 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972), the Court concludes that it cannot ignore the plain language of 9 U.S.C. § 5, nor do the equities of the case[7] warrant doing so. The Court

---

6. Respondent apparently feels that the International Chamber of Commerce would not be as protective of the interests of American businesses as would the New York Chamber of Commerce. However, although preferring the International Chamber of Commerce, petitioner is willing to appear before any arbitrator including the American Arbitration Association, which apparently should alleviate respondent's fears of the arbitrator being prejudiced against American businesses.

7. But cf. *Cia de Navegacion Omsil, S.A. v. Hugo Neu Corp.,* 359 F.Supp. 898 (S.D.N.Y. 1973) (Court did not appoint arbitrator when one arbitrator on three person panel died, but instead ordered parties to select a new panel. The Court noted that it would not be fair for the appointed arbitrator—"respondent's arbitrator"—to join in the deliberations after a series of hearings and meetings had transpired without him. "The two remaining arbitrators, 'petitioner's' and the neutral, have worked together and been exposed to each other's influ-

thus agrees to appoint an arbitrator pursuant to 9 U.S.C. § 5.

Accordingly, petitioner's motion to arbitrate is hereby granted. The only matter remaining is the appointment of a substitute arbitrator. The parties are invited to submit in writing to the Court by January 26, 1978 the names of possible alternate arbitrators. Should the parties fail together in agreeing upon one arbitrator, the Court will designate one.

SO ORDERED.

ence. The results of that may have been good, bad, or nil for respondent. . . . It is not fair or fitting to impose the risk, which respondent never agreed to accept, by judicial command." *Id.* at 899).