In the Matter of the Arbitration between LORY FABRICS, INC., Respondent, and DRESS REHEARSAL, INC., Appellant.

First Department, December 30, 1980

### APPEARANCES OF COUNSEL

*Robert J. Miller* of counsel *(Donald L. Kreindler* and *Michael D. Blutrich* with him on the brief; *Kreindler & Relkin,* attorneys), for appellant.

*Gary M. Lyman* of counsel *(Ballon, Stoll & Itzler,* attorneys), for respondent.

### OPINION OF THE COURT

BIRNS, J.

Special Term granted the petition of Lory Fabrics, Inc. to compel arbitration. Dress Rehearsal, Inc. appeals.

This case presents a problem in the continuing "battle

of the forms."[1] Again, the basic issue is whether there was an enforceable agreement to arbitrate.

The forms which gave rise to the conflicting contentions of the parties were contained in correspondence between Lory, a New York City based firm, and Dress Rehearsal, with headquarters in Los Angeles, California and an office in New York City.

Lory sold 120,000 yards of fabric material to Dress Rehearsal under four separate contracts in March and April, 1979. In each instance, after oral agreement, Lory mailed a contract of sale to Dress Rehearsal. The latter delivered two purchase orders to Lory, each one covering two of Lory's sales contracts.

It is not clear from the record whether the sales contracts were mailed by Lory after receipt of the purchase orders from Dress Rehearsal or whether the forms were "exchanged", that is, crossed each other. In any case, neither party signed the other's form.

Lory's form had the following arbitration clause: "10. Any and all controversies arising out of or relating to this contract, or any modification, breach or cancellation thereof, shall be settled by arbitration in the City of New York in accordance with the Rules then obtaining of the GENERAL ARBITRATION COUNCIL OF THE TEXTILE INDUSTRY and the parties hereto consent to the jurisdiction of any Court of competent jurisdiction in the State of New York for all purposes in connection therewith, including enforcement of the provision for arbitration and for entry of judgment on award; and further consent that any process, notice or other application to the Court or a Judge thereof may be served outside of the State of New York by registered mail or by personal service, provided a reasonable time for appearance is allowed. In any arbitration proceeding aris-

---

1. The term "battle of the forms" is used to describe the practice among business people of transmitting written confirmations, purchase orders and other documents containing terms not included in, and often in conflict with, the terms stated in the other party's forms. (For a discussion of this problem see Page, U.C.C. and Arbitration, NYLJ, Jan. 8, 1976, Feb. 2, 1976, March 1, 1976, p 1, col 1; Mahon, U.C.C. and the Courts—Battle of the Forms, NYLJ, May 17, 1976, p 1, col 1.)

ing under this contract, the arbitrators shall not have the power to change, modify or alter any express condition, term or provision or to render an award which has such effect, and to that extent the scope of their authority is so limited."

Dress Rehearsal's form also contained an arbitration clause, which provided: "11. Any or all controversies or claims arising out of or relating to this contract shall be submitted to arbitration before the West Coast Textile Industry Arbitration Council and the arbitration of such controversies or claims shall be conducted at Los Angeles, California. The West Coast Textile Industry Arbitration Council may, in its discretion, for convenience, transfer the conduct of the arbitration proceedings to San Francisco, California. This contract in all respects shall be governed and construed by the laws of the State of California and the rules then obtaining of the West Coast Textile Industry Arbitration Council. The parties consent to the jurisdiction of the courts of the State of California and further consent that any process or notices of motion or other applications to the court or judge thereof may be served outside the State of California by registered mail or personal service. The parties agree that service as herein set forth shall be sufficient to confer upon such court jurisdiction in personam over the parties. Consent is hereby given to entry of judgment upon the arbitration award in the courts of such county in California as has jurisdiction."

Dress Rehearsal's form further specified: "F. Terms of Seller's order, shipment or approval which are not identical with the terms of this order are not a part of the contract between Seller and Purchaser and are not binding upon purchase."

A dispute arose with reference to the fabric material and Dress Rehearsal stated it did not intend to pay $184,297 billed by Lory for the merchandise. Lory then commenced this proceeding pursuant to CPLR 7503, to compel arbitration in New York City as provided in its arbitration clause.

At Special Term Dress Rehearsal argued that no valid agreement to arbitrate existed between the parties because

—as Dress Rehearsal correctly observed—the respective forms were in conflict as to place of arbitration, administering tribunal, governing rules, court of jurisdiction, controlling State law and limitations of the arbitrators' power.

Relying on *Bardot Fabrics v Cal Togs* (NYLJ, Sept. 30, 1974, p 2, col 2), Special Term directed the parties to arbitrate in New York City. The court held that both parties, by exchanging forms albeit with different provisions in their respective arbitration clauses, clearly demonstrated their intent to arbitrate and voluntarily relinquished their right to proceed in a judicial forum. The court's order directed arbitration before the General Arbitration Council of the Textile Industry in New York City as requested in the petition.

On appeal, Dress Rehearsal reiterates that no valid agreement to arbitrate was made. Maintaining that the contracts involved interstate commerce, it argues that the issue must be determined under the Federal Arbitration Act (US Code, tit 9) and Federal substantive law, that under Federal law no agreement came into existence, and that even were New York law applicable, there was no such agreement.

Lory does not question the interstate nature of the transactions but asserts that resort to Federal substantive law is improper, that New York law is applicable, and in any event, whether this case is decided under Federal or New York law, there is a valid agreement to arbitrate.

The facts are not in dispute.[2] The question presented in this case is one of law: Was there a valid agreement to arbitrate?

In determining this issue, we agree with Dress Re-

---

2. Section 4 of title 9 of the United States Code in pertinent part provides: "The court * * * upon being satisfied that the making of [an] agreement for arbitration * * * is not in issue * * * shall make an order directing the parties to proceed to arbitration * * * If the making of [an] arbitration agreement * * * be in issue, the court shall proceed summarily to the trial thereof."

CPLR 7503 (subd [a]) contains a similar provision: "Where there is no substantial question whether a valid agreement [to arbitrate] was made * * * the court shall direct the parties to arbitrate. Where * * * such question is raised, it shall be tried forthwith in said court."

hearsal that the Federal Arbitration Act (US Code, tit 9) and Federal substantive law control *(Prima Paint Corp. v Flood & Conklin*, 388 US 395, 403-404; *Avila Group v Norma J. of Calif.*, 426 F Supp 537, 540; *Matter of Rederi [Dow Chem. Co.]*, 25 NY2d 576). Under Federal law there is an enforceable arbitration agreement. Assuming, *arguendo*, that State law controls *(Matter of Duplan Corp. [Duplan Yarn Div.] v W. B. Davis Hosiery Mills*, 442 F Supp 86, 88; *Fairfield-Noble Corp. v Pressman-Gutman Co.*, 475 F Supp 899, 902) we reach the same conclusion.

In disputing an agreement to arbitrate, Dress Rehearsal cites *Matter of Lea Tai Textile Co. v Manning Fabrics* (411 F Supp 1404) and *Astra Footwear Ind. v Harwyn Int.* (442 F Supp 907).

In *Lea (supra)* as in the case *sub judice*, both parties conceded the existence of valid contracts for the sale of goods but argued whether there was an agreement to arbitrate. Each exchanged form contained an arbitration clause, which differed, as here, as to venue, administering tribunal, powers of the arbitrators and consent to the jurisdiction of the court. We agree with the District Court's view that the Uniform Commercial Code is an appropriate source of Federal law. However, we disagree with the court's conclusion that no arbitration agreement was effectuated in that case. The court applied, as would we, section 2-207 (subd [2], par [c]) of the Uniform Commercial Code under which upon timely notification of objection, "additional terms" do not become part of the contract.[3] It found, and we agree, that conflicting terms sent, constitute objection by each party to such terms of the other.[4] The court

---

3. Section 2-207 (subd [2], par [c]) of the Uniform Commercial Code, to the extent relevant states:

"The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless * * *

"(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received."

4. The official comment to section 2-207 (subd [2], par [c]) of the Uniform Commercial Code reads:

"6. * * * Where clauses on confirming forms sent by both parties conflict each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result the requirement that there be

then concluded—a conclusion we do not accept—that the arbitration clauses did not become part of the contract. The court reduced the ultimate question to the meaning of the word "term". Referring to the Uniform Commercial Code definition of "[t]erm" as "that portion of an agreement which relates to a particular matter" (Uniform Commercial Code, § 1-201, subd [42]) the court reasoned that the word "term" meant not merely the venue and mode of arbitration but the subject of arbitration as well, and "[s]ince the arbitration clauses [were] in hopeless conflict"[5] *(Matter of Lea Tai Textile Co. v Manning Fabrics, supra, p 1407)*, no valid contract to arbitrate resulted.

We decline to embrace such a broad definition of "term" as espoused by the court in *Lea (supra)*. In our view, "term" does not encompass the entire arbitration clause.

Our conclusion is fortified by the holding in *Astra Footwear Ind. v Harwyn Int. (supra)*, which, contrary to the claim of Dress Rehearsal, supports the judgment that the parties should proceed to arbitration. There (p 908), the relevant part of the arbitration clause provided that arbitration was to proceed before the "Chamber of Commerce in New York". That body ceased to conduct arbitration proceedings five years before the parties' dispute arose. Harwyn argued that the naming of the Chamber of Commerce was an integral part of the substantive rights it had bargained for and in light of that body's inability to hear the dispute, the agreement to arbitrate was vitiated. The court rejected the argument. Citing *Matter of Delma Eng. Corp. (K & L Constr. Co.)* (6 AD2d 710, affd 5 NY2d 852), and "the federal policy to construe liberally arbitration clauses and to resolve doubts in favor of arbitration" *(Astra, supra, p 910)*, the District Court found that a valid agreement to arbitrate existed. It directed the parties to proceed to arbi-

---

notice of objection which is found in subsection (2) is satisfied and the conflicting terms do not become a part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act, including subsection (2)."

5. The court in *Lea (supra,* p 1407) found the differences between the clauses there, one calling for arbitration under the laws of Hong Kong and the other under New York law, "may well affect important substantive rights." We do not find such a situation here. The distinctions between New York and California law are minimal, unlike the dilemma posed in *Lea.*

tration and indicated its willingness to appoint an arbitrator for the parties, if necessary.

New York law, too, favors arbitration *(Matter of Grayson-Robinson Stores [Iris Constr. Corp.]*, 8 NY2d 133, 138; *Matter of C.M.I. Clothesmakers [A.S.K. Knits]*, 85 Misc 2d 462, 464). Once the parties' mutual intention to submit to arbitration and forego access to judicial remedies is clear, the parties are required to proceed to arbitration. *(Matter of Delma Eng. Corp. [K & L Constr. Co.]*, supra; *Michel & Co. v Anabasis Trade*, 50 NY2d 951.)

In *Delma (supra)*, the parties' contract called for arbitration before the New York State Building Congress, which by the time the parties' dispute arose had discontinued conducting arbitration proceedings. The Appellate Division, Second Department, reversed Special Term's stay of arbitration, finding "[t]he dominant intent was to arbitrate, with the machinery of selection of the arbitrators subordinate and incidental" *(Matter of Delma Eng. Corp. [K & L Constr. Co.]*, 6 AD2d 710, aff'd 5 NY2d 852, supra).

In *Michel (supra)*, the parties engaged in a series of transactions. Appellant buyer signed and returned the first confirmation form received from the seller, with knowledge that there was an arbitration clause contained in the form. Appellant thereafter received and retained the subsequent confirmation forms without objection (except as to the credit terms, which the seller changed at appellant's request). The forms in all the transactions were identical in every respect. Appellant sent no form of its own. A disagreement arose as to whether the goods delivered conformed to the orders. The seller sought arbitration. Appellant resisted. It was held that appellant, by signing and returning the first form, manifested an intention to arbitrate and accordingly was bound to arbitrate the parties' dispute.

*Matter of Doughboy Inds. (Pantasote Co.)* (17 AD2d 216) and *Matter of Marlene Inds. (Carnac Textiles)* (45 NY2d 327), cited by Dress Rehearsal, are to be distinguished from the case *sub judice*. In *Doughboy* and *Marlene* there were forms which presented basic conflicts—in each case one form contained an arbitration clause, the other

not. Neither party signed the other's form. The court in those cases found no mutual intention of the parties to arbitrate.

In the case before us, the form of each party contained an arbitration clause. Although neither party signed the other's form, there was, by the inclusion of an arbitration clause in each party's form, an express manifestation by each side to have disputes resolved by arbitration. Arbitration was clearly intended *(Bardot Fabrics v Cal Togs,* NYLJ, Sept. 30, 1974, p 2, col 2, *supra).*

We do not agree with Dress Rehearsal that paragraph F of its contract bars the arbitration clause from becoming part of the parties' contract. Paragraph F does not so state. It does no more than section 2-207 (subd 2, par [c]) of the Uniform Commercial Code, whereunder timely objection to additional terms bars said terms from becoming part of the parties' contract. For the reasons stated above, we find the conflict is only as to the details hereinabove discussed and not to the subject of arbitration. The parties' explicit intention to arbitrate this dispute should be enforced.

The court properly directed arbitration to proceed in New York City. This direction was appropriate, not because that was the venue specified in Lory's arbitration clause— the court did not so hold—but rather because New York City was the most convenient place to try this arbitrable dispute. Nor was it error to provide in the order that arbitration was to proceed before the General Arbitration Council of the Textile Industry. This, too, was proper, not because it was so provided in Lory's arbitration clause, but because both parties indicated their intention to arbitrate before a textile industry arbitration council, and the General Arbitration Council was the industry council in New York City.

Accordingly, the judgment of the Supreme Court, New York County (STADTMAUER, J.), entered February 15, 1980, which granted the petition and compelled the parties to proceed to arbitration before the General Arbitration Council of the Textile Industry in New York City should be affirmed, with costs.

KUPFERMAN, J. P., FEIN, ROSS and BLOOM, JJ., concur.

Judgment, Supreme Court, New York County, entered on February 15, 1980, affirmed. Respondent shall recover of appellant $50 costs and disbursements of this appeal.