**PETERS FABRICS, INC., Plaintiff,**

v.

**JANTZEN, INC., Defendant.**

**JANTZEN, INC., Plaintiff,**

v.

**PETERS FABRICS, INC., Defendant.**

Nos. 82 Civ. 5168 (JES), 82 Civ. 5169 (JES).

United States District Court, S.D. New York.

March 21, 1984.

Lester A. Lazarus, P.C., New York City, for Peters Fabrics, Inc.; Harvey F. Friedman, New York City, of counsel.

Morril & Paul, New York City, for Jantzen, Inc.; Marcia B. Paul, New York City, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

In one of these two actions, 82 Civ. 5169, Peters Fabrics, Inc. ("Peters") sought to confirm an arbitration award in the New York Supreme Court, New York County, under Article 75 of the New York Civil Practice Law and Rules. The action was removed to this Court by Jantzen, Inc. ("Jantzen") pursuant to 28 U.S.C. § 1441(a). At the same time, Jantzen instituted a related action against Peters, 82 Civ. 5168, seeking to recover money damages and to vacate the arbitration award.

Jantzen, a Nevada corporation with its principal place of business in Oregon, is a manufacturer of apparel. Peters, a Massachusetts corporation with a place of business in New York, is a textile importer. Federal jurisdiction is predicated on diversity of citizenship and a jurisdictional amount in excess of $10,000. 28 U.S.C. § 1332(a)(1).

## FACTS

On March 5, 1980, the parties entered into an oral agreement by telephone whereby Peters agreed to sell, and Jantzen to buy, over 20,000 yards of gray and navy flannel fabric for use in Jantzen's fall line of apparel. Peters shipped the fabric on March 10. Jantzen sent Peters two purchase orders, one dated March 5, 1980 and one dated March 7, 1980. Affidavit of Marcia B. Paul, Esq. ("Paul Affidavit"), Exh. A. Peters, in turn, sent Jantzen a sales confirmation dated March 7, 1980.[1] Affida-

---

**1.** The March 7 purchase order and the March 7 sales confirmation correspond exactly with respect to price, quantity, and type of fabric. It is unclear, however, whether there was a Peters

vit of Harvey F. Friedman, Esq. ("Friedman Affidavit"), Exh. A; Paul Affidavit, Exh. B.

The sales confirmation and the purchase orders contained dissimilar provisions and crossed in the mail.[2] The arbitration clause in Jantzen's purchase orders provided for arbitration in accordance with the rules of the American Arbitration Association ("AAA"), while the arbitration clause in Peters' sales confirmation called for arbitration in New York City before the General Arbitration Council of the Textile Industry ("GAC").[3] In addition, Jantzen's purchase orders included a typewritten addition which specified that "[t]his fabric is to be used in a coordinate program. All colors must have a critical color match both within each dye lot and from lot to lot." [4] Paul Affidavit, Exh. A.

The difficulties between the parties began April 18, 1980 when Jantzen, after testing the fabric for color match, determined that 2,380 yards of gray fabric was off color. Jantzen reported the results of its test to Peters, and informed Peters that it was rejecting the fabric as nonconforming goods.[5] Peters then retained its own

sales confirmation corresponding to the March 5 Jantzen purchase order.

2. A "battle of the forms" arises when business people enter into an oral agreement and later exchange formal written acknowledgements that embody their agreement but also contain terms that are not included in, and often conflict with, the terms set forth in the other party's form.

Section 2–207 of the Uniform Commercial Code provides in part that:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

N.Y. Uniform Commercial Code § 2–207 (McKinney 1964).

3. Paragraph 12 of Jantzen's purchase orders provided "Any controversy or claim arising out of, or relating to this order shall be settled by arbitration in accordance with the rules, then obtaining, of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof." Paul Affidavit, Exh. A.

The arbitration clause in paragraph 15 of Peters' sales confirmation provided that:

Any controversy arising out of or relating to this contract, shall be settled by arbitration in the City of New York in accordance with the Rules then obtaining of the General Arbitration Council of the Textile Industry. The arbitrators sitting in any such controversy shall have no power to alter or modify any express provision of this contract, including without limitation, the provisions of paragraph 6 applicable to Claims, or to render any award which by its terms effects any such alteration, or modification. The parties consent to the jurisdiction of the Supreme Court of the State of New York, and of the United States District Court for the Southern District of New York and, this sale being an interstate commerce, to jurisdiction under the Federal Arbitration Act as well as the arbitration statutes of the State of New York, for all purpose in connection with said arbitration. The parties further consent that any process or notice of motion or other application to either of said Courts or a Judge thereof, may be served inside or outside the State or Southern District of New York by registered or certified mail return receipt requested or by personal service provided a reasonable time for appearance is allowed, or in such other manner as may be permissible under the Rules of said Court.

Seller shall have all rights to provisional remedies which it would have at law, notwithstanding the existence of this agreement to arbitrate. Friedman Affidavit, Exh. A; Paul Affidavit, Exh. B.

4. The parties dispute whether Jantzen's need for a more precise match was communicated to Peters during the March 5 telephone conversation or whether Peters first learned of it upon receiving the purchase order, after having already shipped the fabric.

5. After rejecting some of the fabric, Jantzen proceeded to manufacture women's apparel for its coordinate line with the remaining fabric. When the garments were in the process of being finished, Jantzen determined that some of them had unacceptable shading differences within individual pieces. Jantzen notified Peters of this additional problem in June 1980. This alleged

fabric tester who determined that the fabric was "commercially acceptable."[6]

In August 1981, over a year later, Jantzen returned the uncut fabric to Peters pursuant to a letter from Peters which authorized the return. Jantzen withheld payment on two current Peters' invoices up to the value of the goods returned, in accordance with their standard policy. Peters accepted the return of the goods, retested them, and once again determined that the material was commercially acceptable. Peters then resold the fabric.

On November 10, 1981, Peters served Jantzen with a demand for arbitration of Peters' claim for damages which resulted from Jantzen's return of the fabric and Peters' resale at a lower price. The demand indicated that the arbitration could be conducted pursuant to the rules of either the AAA or the GAC. On November 19, 1981, counsel for Jantzen replied by letter to Peters' counsel (with a copy to the administrator of the GAC) that Jantzen had not agreed to arbitrate under any rules other than those of the AAA, and that Jantzen intended to move for a stay of the arbitration if it were to be conducted under any other rules. Friedman Affidavit, Exh. C; Paul Affidavit, Exh. E.

There was no further communication between the GAC and the parties until the GAC administrator sent a letter dated January 13, 1982, acknowledging receipt of Jantzen's letter and addressing several procedural issues. The letter informed Jantzen of its right, pursuant to section 6 of the GAC rules, to file an answering statement and/or counterclaim within ten days from the date of the administrator's letter. Jantzen did not do so, apparently resting on its claim that the GAC lacked jurisdiction over the dispute because Jantzen had not agreed to arbitrate under its rules. By letter to the GAC administrator dated January 21, 1982 (with a copy to Jantzen),

Peters indicated that it had chosen, as initiator of the arbitration, to proceed under GAC rules in accordance with the terms of its sales confirmation. Friedman Affidavit, Exh. D.

On January 27, after having received no response from Jantzen, the administrator decided to go forward with the arbitration in New York City under the rules of the GAC. On January 28, Jantzen sent a mailgram requesting an extension of time in which to respond to the demand. Peters agreed to allow Jantzen one week in which to answer the demand and to review the list of arbitrators.

Between January 28 and February 18, the parties and the GAC administrator exchanged correspondence. Jantzen objected to the GAC's jurisdiction and maintained that it would apply for a stay of the arbitration; Peters and the GAC administrator indicated that, absent a court order, the GAC had no power to stay the arbitration and would proceed.

Between February and May, the administrator proceeded to assign an arbitrator and schedule the hearing. In late May, Jantzen retained New York counsel. In a letter to the GAC administrator, Jantzen's counsel requested a week's adjournment and informed him that Jantzen planned to interpose a counterclaim. Peters' counsel objected to both the counterclaim and the adjournment. The request for an adjournment was denied by the arbitrator. On June 2, Jantzen submitted its proposed counterclaim to the GAC. By letter dated June 8, 1982, the administrator informed the parties that, pursuant to the rules of the GAC and the arbitrator's discretion, the counterclaim would not be accepted. Friedman Affidavit, Exh. W.

At the arbitration on June 9, 1982, Jantzen renewed its jurisdictional objection and its request to interpose a counterclaim.

---

problem, relating to the cut fabric, was the basis for the counterclaim which Jantzen unsuccessfully sought to assert against Peters at the arbitration hearing; it is also the basis for Jantzen's $16,350 damages claim in its action before this Court.

6. "Commercially acceptable," however, is a less stringent standard than that specified in Jantzen's purchase order.

The arbitrator overruled the jurisdictional objection and denied Jantzen's request to submit a counterclaim. *See* Transcript of Arbitration Hearing ("Tr.") at 3–18. Both parties presented witnesses and evidence with respect to the color testing of the fabric.

The arbitrator issued an award in favor of Peters on June 18, 1982.[7] Peters has moved to confirm that award. Jantzen has moved to vacate it on the grounds that: (1) there was no agreement to arbitrate; (2) there was no agreement to arbitrate before the GAC; and (3) the arbitrator was guilty of misconduct.

### DISCUSSION

*Agreement to Arbitrate*

■ It is well settled that the existence or non-existence of an agreement to arbitrate is properly a matter to be resolved by the court. *See, e.g., Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). In resolving the issue of arbitrability, courts should determine the contractual intent of the parties. *See, e.g., Fuller v. Guthrie*, 565 F.2d 259, 260–61 (2d Cir.1977); *see also Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S.Ct. 1318, 1320–21, 8 L.Ed.2d 462 (1962). Although a party cannot be compelled to arbitrate a dispute absent a clear intention to do so, the broad federal policy favoring arbitration requires that any doubts with regard to whether commercial entities have agreed to arbitrate should be resolved in favor of arbitration. *See Consumer Concepts, Inc. v. Mego Corp.*, 458 F.Supp. 543, 544 (S.D.N.Y. 1978).

Jantzen argues that, because there are differences between the rules of the GAC and the AAA, the arbitration clauses should be deemed "additional terms" as defined by UCC § 2–207(2) and excluded from the contract as material alterations.[8] The similarities and differences in the two sets of rules have been considered before in this court. In *Dan River, Inc. v. Cal-Togs, Inc.*, 451 F.Supp. 497 (S.D.N.Y.1978), the court found that, although the rules of the GAC and the AAA are not exactly the same, the GAC is the textile division of the AAA and its rules do not differ significantly from those of the AAA; it further noted that AAA personnel administer the GAC rules and the two tribunals share a common pool of arbitrators. The court concluded that the differences in the rules were "merely of a technical and non-substantive nature." *Id.* at 502.

■ In this case, it is clear that both parties intended to submit any disputes arising from their business dealings to arbitration. Both Jantzen and Peters included an arbitration clause in their respective purchase orders and sales confirmation.[9] Since the GAC and AAA rules are not significantly different, the fact that the purchase orders and the confirmation required arbitration before different tribunals is not sufficient to negate the unequivocally expressed intent of both parties to submit disputes to arbitration. *See Lory Fabrics, Inc. v. Dress Rehearsal Inc.*, 78 A.D.2d 262, 264–70, 434 N.Y.S.2d 359, 362–64 (1st Dep't 1980).

*Agreement to Arbitrate Before the GAC*

■ Jantzen further argues that, even assuming that a valid agreement to arbitrate exists, it never agreed to arbitrate before the GAC and that the arbitrator's

---

**7.** The award provided, *inter alia*, that Jantzen pay Peters a total sum of $6,214.05, representing Peters' loss due to its resale of the goods. Jantzen Complaint, Exh. C.

**8.** Jantzen cites two rules differences as being material. First, AAA rules permit arbitration in numerous forums, while GAC rules require arbitration in New York City. Secondly, under AAA rules, the parties could have agreed to proceed

before three arbitrators, whereas GAC rules require a single arbitrator where the amount in controversy does not exceed $15,000.

**9.** The Court further notes, in interpreting the intent of the parties, that arbitration clauses are commonly used in the textile industry. *See, e.g., Gaynor-Stafford Industries, Inc. v. Mafco Textured Fibers*, 52 A.D.2d 481, 484–85, 384 N.Y. S.2d 788, 790–91 (1st Dep't 1976).

award should be vacated on that ground alone. The Court does not agree. If Jantzen believed that the arbitration should instead have gone forward before the AAA, it had an appropriate remedy. It could have moved to stay the GAC proceeding and sought to compel arbitration in a forum of its choice. Although Jantzen threatened to do so, it never did. Instead, it participated in the arbitration hearing and took the calculated risk that it might later be able to successfully challenge an unfavorable award because of the procedural differences between the rules of the GAC and the AAA.

Jantzen has cited no authority to support its position that, where an otherwise valid agreement to arbitrate exists, a party can proceed with arbitration without judicially challenging the authority of that particular arbitration tribunal and later vacate an award because of slight procedural differences between it and the forum of its choice. In the absence of any controlling authority, this Court can see no sound policy reasons why a party should be permitted to profit from a strategic decision to defer seeking a ruling on an arbitrator's authority until after he renders his award, especially since it is clear that had the award been favorable, Jantzen would not now be challenging the authority of the arbitrator.

*Alleged Misconduct of the Arbitrator*

■ Jantzen claims that the award should be vacated because the arbitrator was guilty of misconduct.[10] Pursuant to 9 U.S.C. § 10(c), a district court may vacate an arbitration award:

> Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any

other misbehavior by which the rights of any party have been prejudiced.

The misconduct alleged by Jantzen is that: (1) the arbitrator refused to hear evidence with respect to Jantzen's counterclaim; and (2) he refused to consider whether Peters had waived its right to seek damages because it had authorized and accepted a return of the goods.

■ The arbitrator was guilty of no misconduct in refusing to hear Jantzen's counterclaim. Jantzen was apprised by the GAC administrator by letter dated January 13, 1982 that it had ten days in which to submit an answer or counterclaim. Friedman Affidavit, Exh. E. On January 28, Jantzen requested a one week extension from the GAC in order to have time to respond to the demand, and Peters consented. Friedman Affidavit para. 15 & Exh. G. Months passed and Jantzen took no steps to assert a counterclaim. On April 14, the hearing date was set. Friedman Affidavit, Exh. O. Not until May 24 did Jantzen's newly retained New York counsel seek the permission of the arbitrator to assert its counterclaim, Friedman Affidavit, Exh. P, and the answer and counterclaim were not submitted until June 2, just seven days before the hearing. Friedman Affidavit, Exh. S.

Although the arbitrator did not specify his reason for rejecting the counterclaim, the counterclaim was clearly untimely. The arbitrator acted well within the proper scope of his discretion in refusing to consider a counterclaim submitted only one week before the arbitration hearing.[11] *Cf. International Ladies' Garment Workers' Union, Local 111 v. DeeVille Blouse Co.*, 486 F.Supp. 1253, 1259–60 (E.D.Pa.1980).

■ At oral argument, counsel for Jantzen also contended that the arbitrator erred

---

**10.** The role of courts in reviewing arbitration awards is severely limited. *Wilko v. Swan*, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953). The grounds for vacating an arbitration award are limited to those specified in 9 U.S.C. § 10(a)–(d) plus the additional ground of "manifest disregard" of the applicable law by the arbitrator. *Office of Supply, Government of the Republic of Korea v. New York Navigation*

*Co.*, 469 F.2d 377, 379–80 (2d Cir.1972); *Trafalgar Shipping Co. v. International Milling Co.*, 401 F.2d 568, 572–73 (2d Cir.1968).

**11.** Section 9 of GAC rules provides that, once an arbitrator has been appointed, no new or different claim may be submitted without his consent.

in rejecting its evidence regarding defects in the cut fabric (the basis for the counterclaim) which established that Jantzen had suffered damages which were the basis for an *offset* of any award to Peters. That argument lacks merit for two reasons.

First, when counsel for Jantzen sought to introduce that evidence, the arbitrator was never informed that the evidence was offered to establish an offset claim, as opposed to a counterclaim.[12] In rejecting the proffered testimony, the arbitrator emphasized that he would not permit Jantzen to assert a counterclaim and that he had already ruled on that issue. Tr. at 120–22. Having failed to put the arbitrator on notice that it sought to assert an offset claim rather than a counterclaim, Jantzen may not now argue that the arbitrator's decision to reject the evidence requires a vacation of the award.[13]

Secondly, even if it had been properly denominated as such, Jantzen has cited no controlling authority for the proposition that the arbitrator was required to hear its offset claim at the hearing. Moreover, the GAC rules contain no requirement that a respondent assert any claims it might have against the initiating party that arise out of the transaction that is the subject matter of the arbitration. *Compare* Rule 6 of the GAC Rules *with* Fed.R.Civ.Pro. 13(a). Therefore, it is clear that Jantzen may assert its claim against Peters in another proceeding and was in no way prejudiced by the exclusion of its evidence. *Cf. Tokura Construction Co. v. Corporacion Raymond, S.A.*, 533 F.Supp. 1274, 1279 (S.D. Tex.1982).

Jantzen's final claim is that the arbitrator failed to consider whether Peters waived its right to seek damages for Jantzen's rejection by accepting the rejected goods back. That claim is not supported by the facts. The arbitrator did allow testimony on the subject of whether the goods were merely returned for inspection or were accepted back by Peters. *See* Tr. at 47–50, 139–60.

It is axiomatic that the Court may not overturn an arbitrator's award because of a mere mistake of law and that it is not for the court to substitute its own judgment for that of the arbitrator. *Maidman v. O'Brien*, 473 F.Supp. 25, 28 (S.D.N.Y.1979); *see also Fairchild & Co. v. Richmond, Fredericksburg and Potomac Railroad*, 516 F.Supp. 1305, 1315 (D.D.C.1981). Arbitrators are chosen for their knowledge and experience in the industry that is the subject of the arbitration, not for their knowledge of the law. It is clear from the transcript of the hearing that the arbitrator did in fact consider whether the goods had been accepted back by Peters but, drawing on his expertise, rejected Jantzen's waiver argument.

### CONCLUSION

Jantzen's motion to vacate the arbitration award is denied; Peters' motion to confirm is granted. Jantzen's claim for damages is dismissed without prejudice to its right to pursue that claim in an appropriate forum. Peters is directed to submit a proposed judgment within fifteen days of the date of this decision.

It is SO ORDERED.

---

**12.** As the Court has already found, the arbitrator's refusal to entertain Jantzen's counterclaim was a proper exercise of his discretion.

**13.** Indeed, earlier in the proceeding, the arbitrator had indicated that he would hear such evidence as part of Jantzen's defense but would not entertain a separate claim. *See* Tr. at 14–15. Given that circumstance, it was especially incumbent upon Jantzen to alert the arbitrator to the claim now made that its evidence related to an offset and not to the rejected counterclaim.