**PUTNAM MILLS CORPORATION, Petitioner,**

v.

**BRADFORD DYEING ASSOCIATION, Respondent.**

No. 87 Civ. 7676 (RWS).

United States District Court, S.D. New York.

Jan. 4, 1988.

Silverberg Stonehill & Goldsmith, P.C., New York City (Kenneth R. Schachter, of counsel), for petitioner.

Shea & Gould, New York City, for respondent.

OPINION

SWEET, District Judge.

Petitioner Putnam Mills Corporation ("Putnam") has petitioned this court to stay an arbitration commenced by respondent Bradford Dyeing Association, Inc. ("Bradford"). Upon the submissions and argument held on November 6, 1987 the petition is dismissed.

**Findings**

Putnam is a New York corporation doing business as a textile converter at 1370 Broadway, New York City. Bradford is a

Rhode Island corporation which provides dyeing services with a principal place of business in Westerly, Rhode Island and a local office located at 104 West 40th Street, New York City.

Bradford and Putnam have had an ongoing business relationship in the textile industry as merchants for a number of years, and Bradford has furnished to Putnam a variety of dyeing services, including the dyeing of fabric for end use as military uniforms.

In mid–1985, Bradford and Putnam entered into negotiations for a contract (Contract Number DLA–100–85–C–0796) (the "Contract") for the finishing by Bradford of certain greige fabric, known as Filament Nomex twill, Sage Green 1565, in connection with Putnam's contract to furnish uniforms to the military. Neither party offered the Contract to the court, nor was any choice of law provision noted by the parties.

In connection with the Contract between Bradford and Putnam, Bradford received certain dye orders from Putnam, which were issued by Putnam against lots of greige goods shipped to Bradford. Dye orders Nos. 58508 and 58509 were placed on September 12, 1985. Dye order no. 58810 was placed on December 26, 1985, and dye order no. 59116 was placed on March 25, 1986.

Upon receipt of each dye order, Bradford sent to Putnam a written confirmation stating Bradford's acceptance of each such order. Bradford's acceptance of the various dye orders was made subject to terms stated on the reverse side of the written confirmation. Bradford's acceptance stated as follows:

> is conditional upon and subject to the terms and conditions on the reverse side of this form.

> If this arrangement is satisfactory to you, no further acknowledgement is necessary. If, however, it is unsatisfactory, advise us at once so the goods will not be put in process.

Included among the terms set forth on Bradford's confirmations was an agreement to arbitrate all disputes, controversies, and claims between Bradford and Putnam arising out of the Contract.

Putnam did not object to Bradford's written confirmations with respect to the Contract or Bradford's prior use of the confirmation form, including the arbitration provision. In fact, Bradford and Putnam had conducted business in this identical fashion for several years. Bradford had always communicated its acceptance of Putnam's dye orders by using the written confirmation form.

According to Bradford's president, the inclusion of the arbitration provision in Bradford's acceptances of the dye orders is customary in the textile industry, a statement which is not challenged by Putnam's factual submission. No agreement was signed by the parties relating to arbitration.

In connection with Putnam's dye orders, the greige fabric was shipped to Bradford at Putnam's instructions from the manufacturer, Burlington Industries. In attempting to finish the fabric shipped from Burlington Industries, Bradford encountered significant difficulties due to excessive sizing and wax that had been applied during the manufacturing process to the greige fabric. After completion of the finished process under the Contract, Bradford advised Putnam that Bradford would return to Burlington Industries approximately 11,000 yards of "mill seconds" that were unfinishable due to defective manufacture and on May 8, 1986 Putnam advised Burlington Industries that Bradford was holding mill seconds at its plant for pick-up by Burlington Industries. On October 19, 1986, Putnam sent Bradford written instructions to release the mill seconds to Burlington Industries, and on the same date, Putnam forwarded its debit memorandum number 761 to Burlington Industries indicating that Putnam was charging back Burlington Industries' account in the amount of $19,398.41 for the mill seconds

being held by Bradford. By letter dated December 16, 1986, Burlington Industries advised Putnam that it would not honor debit memorandum number 761 for the reason that Burlington Industries refused any responsibility for the defective greige fabric.

Then by letter dated March 13, 1987, Putnam advised Bradford that Putnam would "look to" Bradford for debit memorandum, and on April 10, 1987, Bradford, through its attorneys, demanded that Putnam make payment in full to Bradford for the amount specified in Putnam's debit memorandum number 761. When Putnam subsequently failed to respond to Bradford's demand letter, Bradford on July 30, 1987 demanded arbitration in accordance with the agreement to arbitrate between the parties and served the demand for arbitration upon Putnam in accordance with the American Arbitration Association's Commercial Arbitration rules. Since receipt of Bradford's demand for arbitration, the American Arbitration Association, through its regional office in Boston, Massachusetts, has proceeded with the administration of the arbitration. Putnam objected to arbitration on October 1, 1987.

### Conclusions

Although the parties appear to agree that the court has diversity jurisdiction as well as jurisdiction under the Federal Arbitration Act, 9 U.S.C. Sections 1–14, (the "Act"), this proposition is not apparent to the court.

Putnam petitioned the court to stay arbitration—a summary proceeding. The Federal Arbitration Act, 9 U.S.C. § 4 gives federal courts jurisdiction over summary proceedings to compel arbitration. However, no similar mechanism has been pointed out to stay arbitration. A party would have to move for a stay in the context of a standard civil action before the court, an action which must, under the Federal Rules of Civil Procedure Rule 3, begin by the filing of a complaint.

It is worth noting, however, that were this proceeding filed in the appropriate context, a stay of arbitration would be improper. Contrary to Bradford's contentions, enforcement of arbitration is a matter of federal common law. *See, e.g., Guinness–Harp Corp. v. Joseph Schlitz Brewing Co.,* 613 F.2d 468 (2d Cir.1980).[1] According to Putnam, under federal law a signed agreement is required to evidence an agreement to arbitrate, relying upon *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). However, this Circuit does not require signing if the contract has been reached, *McAllister Bros. v. A & S Transportation Co.,* 621 F.2d 519 (2d Cir.1980), and under the federal common law it is has been held that acceptance of orders including a form which contains and arbitration clause constitutes a contract provision, *Avila Group Inc. v. Norma J. of California,* 426 F.Supp. 537 (S.D.N.Y.1977), *Peters Fabric, Inc. v. Jantzen, Inc.,* 582 F.Supp. 1287 (S.D.N.Y.1984). Thus, it appears that the agreement to arbitrate is valid in any event.

For the reasons set forth above Putnam's petition to stay arbitration is dismissed.

IT IS SO ORDERED.

---

**1.** Bradford, without explanation, relied on New York law and most significantly on Article 2 of the New York Uniform Commercial Code. Not only is this reliance misplaced because validity of arbitration agreements sought to be enforced under the Federal Arbitration Act is a matter of federal law, but because Article 2 could not be applied to this proceeding in any event. Article 2 of the UCC governs the sale of goods. The instant contract was for provision of services.