OPINION OF THE COURT
Eugene L. Nardelli, J.
Dalton Packaging Inc. (Dalton) used its new fax machine to send an order from North Carolina to American Multimedia, Inc. (AMI) in Connecticut on April 28, 1988. AMI alleges that only the first page of the order form was faxed to it and that the second page on the reverse thereof was not. That second page of the form lists the terms and conditions of the order including a provision (para 8) for arbitration. The first page of the order clearly recites: "All orders are subject to the terms and conditions as set forth on the reverse side of the order.” Dalton alleges and AMI does not deny that AMI had filled over 100 such orders in the previous three years after having received identical two-sided forms with the order on the front and the terms and conditions on the reverse.
Alleging that the goods supplied pursuant to the April 28, 1988, order were defective, Dalton sent a demand for arbitration by certified mail, return receipt requested, which was received by AMI on August 1, 1988. On December 29, 1988, AMI petitioned this court for a stay of arbitration pursuant to CPLR 7503 (c).
CPLR 7503 (c) provides: "An application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded.” AMI contends, however, that there was no agreement to arbitrate and that, pursuant to Matter of Matarasso (Continental Cas. Co.) (82 AD2d 861 [2d Dept]) and Glasser v Price (35 AD2d 98 [2d Dept]), where no arbitration agreement exists between the parties, a nonparty cannot be held to an arbitration agreement because he failed to seek a stay within the statutory limit.
The question indeed under State law is whether there is a real dispute over whether the parties have agreed to arbitrate. If there is, that issue can be litigated beyond the 20-day limit. (See, McLaughlin, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR C7503:9, at 364.) Here the court finds that there is a dispute over whether the parties have agreed to arbitrate. But whether or not there is an agreement to arbitrate is a question of law and, since the sale was in interstate commerce, that question must be decided *297 under Federal law. (Southland Corp. v Keating, 465 US 1; Matter of Lory Fabrics v Dress Rehearsal, 78 AD2d 262 [1st Dept].) Here AMI admits the receipt of the first page of the order form. It does not deny that it received and filled the many orders on two-sided forms; but it argues that at no time did it agree to the arbitration clause, at no time did it enter into a written agreement which contained the arbitration clause, and that the "Court does not have to reach the issue of whether or not an unsigned contract complied with by petitioner is a valid contract.”
To begin with, though an arbitration agreement has to be in writing (9 USC § 2), there is no requirement that it be signed; an agreement can be shown by other proof. (See, Matter of Lory Fabrics v Dress Rehearsal, supra; compare, Matter of Burma Bibas v Toyoshima & Co., 60 AD2d 554 [1st Dept].) Unless there is a clear intent that an arbitration clause does not apply, doubts as to the parties’ intent should be resolved in favor of arbitration. (Consumer Concepts v Mego Corp., 458 F Supp 543 [SD NY].) Unless a court can state with positive assurance that a dispute was not meant to be arbitrated, an asserted dispute should be resolved in favor of arbitration. (Ashe Assocs. v Envirogenics Co., 425 F Supp 238, 243 [ED Pa].) In that case the purchase order did not specifically refer to the "General Conditions”, which contained the arbitration clause and which were in a separate document. The purchase order did incorporate by reference a specification PS-7538, however, which did refer to the "General Conditions”. The facts showed that Ashe did have a copy of the "General Conditions”. Ashe was thus on notice of the "General Conditions”, even though it did not have actual notice of them. It was held to have had sufficient constructive notice to support the incorporation by reference of the "General Conditions” in their entirety into the contract. In the instant case AMI did have actual notice of conditions and after filling more than 100 orders pursuant to two-sided forms clearly knew what those conditions were. Similarly, a textile buyer was held bound by the arbitration provision on the reverse side of a seller’s order forms despite the contention that the buyer had no notice of it and had not read it; both parties were sophisticated in the textile field and the forms stated on their face that orders were given subject to terms on the reverse side. (Avila Group v Norma J. of Cal., 426 F Supp 537 [SD NY]; compare, Matter of Burma Bibas v Toyoshima & Co., supra.) In the instant case the first page of the order form also *298 included the clear notice that the contract to be accepted was subject to the terms and conditions on the reverse. There can be no doubt that AMI had subjected itself to arbitration by acting on more than 100 identical but two-sided order forms over the previous three years. Likewise there can be no doubt that, with the clear notice on the fax copy that the order was subject to the terms and conditions on the reverse, it should have known that the order was subject to the same terms and conditions as the many other orders it had filled for Dalton, including the arbitration clause. It accepted the order by filling it, and it accepted those terms and conditions.
AMI’s petition for a stay of arbitration is denied and the parties are directed to proceed to arbitration in accordance with the arbitration agreement.