John W. Warren and his wife Debra A. Warren petition this Court for a writ of mandamus directing the Randolph Circuit Court to vacate its order compelling arbitration of their claims against the defendant, American Home Place, Inc. We deny the writ.
 I.
In January 1996, John Warten and American Home Place, Inc. ("American Home"), entered into a contract for the construction of a house on a parcel of land owned by Warren. The contract included an arbitration clause that provided, in pertinent part:
 "It is mutually agreed that any unresolved disagreement arising out of this contract during the construction period, warranty period or thereafter must be submitted by owner or by Contractor to National Academy of Conciliators for a binding arbitration. It is mutually agreed that any arbitration award shall have the same weight as legal decision on any differences herein arising, and both parties agree that no further recourse of any kind may be sought after the arbitration award is rendered."
(Emphasis added.) The contract identified John Warren as the "Owner" and American Home as the "Contractor," and it was signed only by John Warren and an agent for American Home.[1] *Page 47 
American Home began constructing the house; however, the parties disagree as to whether it ever fully completed the construction. The Warrens ultimately sued American Home. Their complaint alleged that they both had entered into the construction contract with American Home and that American Home had breached the contract by causing numerous delays ill the construction and numerous flaws in the house. They further made a claim of "statutory fraud," alleging, among other things, that American Home had misrepresented in the contract the amount of time it would take to complete the construction of the house.
American Home moved to compel arbitration of these claims, based upon the arbitration clause. The Warrens argued that the arbitration agreement could not be enforced because the arbitrator named therein, the National Academy of Conciliators, was no longer in existence. They further argued that even if the arbitration agreement could be enforced against Mr. Warren, it could not be enforced against Mrs. Warren, because she was not a signatory to the construction contract. The trial court ruled that the dissolution of the National Academy of Conciliators did not affect the validity of the arbitration clause, and that that clause was enforceable against both of the Warrens.
 II.
The Federal Arbitration Act, 9 U.S.C. § 2 et seq. ("FAA"), mandates arbitration of a claim if a written agreement calls for arbitration and that agreement appears in a contract evidencing a transaction involving interstate commerce.[2]
The Warrens first argue that, because Mrs. Warren did not sign the construction contract, she cannot be compelled to submit her claims against American Home to arbitration. They emphasize that arbitration is a creature of contract and that a party cannot be required to submit to arbitration any dispute that he or she has not agreed so to submit. Ex parte Isbell, 708 So.2d 571 (Ala. 1997). The Warrens point out that the arbitration clause specifically refers only to "Owner," identified as John Warren, and "Contractor," identified as American Home. The Warrens thus conclude that this arbitration clause is narrowly drawn and cannot be extended to include Mrs. Warren, who they say was not contemplated to come within its scope.
However, the Warrens' argument reveals a flaw that undercuts Mrs. Warren's right to maintain her claims and that renders this issue moot. The record shows that both of the claims are based upon the construction contract.[3] Although the Warrens brought their claims as co-parties to the contract, Mrs. Warren concedes in her brief that she is "not a party to the contract containing the arbitration agreement," Warren reply brief at 4, and that she is not a third-party beneficiary of that contract. Warren replybrief at 7. The record confirms that the contract does not name Mrs. Warren as a party and that it does not refer to her. In her efforts to avoid arbitration,[4] Mrs. Warren has conceded that she has no right to recover under the contract, by disavowing any status as a party to the contract or as a third-party beneficiary. Also, because she has disavowed any status as a party to the contract, she has no claim based on fraud in the inducement of that contract. Because Mrs. Warren has *Page 48 
disclaimed any basis for recovery on her claims, any error in compelling arbitration of her claims would be harmless. She has failed to demonstrate a clear right to the relief she seeks; the mandamus petition is thus due to be denied as to her.
 III.
The Warrens next argue that the arbitration agreement is void because the arbitrator that it specifies, the National Academy of Conciliators, is no longer in existence. The Warrens again emphasize that arbitration is a creature of contract and that, like any other contract, an arbitration agreement must be enforced in accordance with its terms. Koullas v. Ramsey,683 So.2d 415 (Ala. 1996) The Warrens point out that American Home drafted the arbitration agreement, and they argue that it "cannot escape from the terms that it drafted simply because it now finds those terms inconvenient," quoting Crown Pontiac Inc. v.McCarrell, 695 So.2d 615, 618 (Ala. 1997).
Under the Federal Arbitration Act, the fact that an arbitrator named in the arbitration agreement is unable to act as an arbitrator over the parties' controversy does not necessarily void the arbitration agreement Section 5 of the FAA (9 U.S.C. § 5) provides:
 "If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator."
Based upon § 5, federal courts have established the general rule that, where the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement but instead appoints a different arbitrator. Astra Footwear Industry v. Harwyn, Int'l Inc.,442 F. Supp. 907 (S.D.N.Y. 1978); see, also, McGuire, Cornwell Blakey v. Grider, 771 F. Supp. 319 (D.Colo. 1991). In Astra, a Yugoslavian footwear manufacturer brought an action against a New York footwear distributor to compel arbitration of a contract dispute; the arbitration agreement specified that the arbitrator of the claims would be the Chamber of Commerce in New York. However, when the claims were brought, the Chamber of Commerce of New York had ceased to arbitrate disputes. The federal district court determined that where the arbitrator selected by the parties cannot or will not perform, a "lapse in the naming" of the arbitrator occurs and § 5 of the FAA is to applied, thus allowing the trial court to appoint a replacement arbitrator.Astra, 442 F. Supp. at 910.
However, the federal courts have also recognized an exception to the general rule: where it is clear that a specific failed term of an arbitration agreement is not an ancillary logistical concern but, rather, is as important a consideration as the arbitration agreement itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail. Zechman v. Merrill Lynch, Pierce, Fenner Smith, Inc., 742 F. Supp. 1359 (N.D. Ill. 1990).
 "Where one term of an arbitration agreement has failed, the decision between substituting a new term for the failed provision and refusing to enforce the agreement altogether turns on the intent of the parties `at the time the agreement was executed, as deter mined from the language of the contract and the surrounding circumstances.'"
Zechman, at 1364, quoting National Iranian Oil Co. v. AshlandOil, Inc., 817 F.2d 326, 333 (5th Cir. 1987) (where parties intended that the laws and procedures of a particular forum would govern arbitration between them, a federal court need not compel arbitration if that forum is unavailable). See, also, McGuire,Cornwell Blakey v. Glider, supra (where there was no indication that the *Page 49 
naming of a specific arbitrator was central to the parties' agreement to arbitrate, the named arbitrator's unwillingness to arbitrate the parties' dispute did not void the arbitration agreement); In re Salomon Inc. Shareholders' DerivativeLitigation, 68 F.3d 554 (2d Cir. 1995) (because the dominant intent of the parties was to arbitrate before particular arbitrators, the failure of those arbitrators to perform voided the arbitration agreement). To determine this intent, courts look to the "essence" of the arbitration agreement; to the extent the court can infer that the essential term of the provision is the agreement to arbitrate, that agreement will be enforced despite the failure of one of the terms of the bargain. Zechman, supra.
There is no evidence that John Warren or American Home intended their choice of an arbitrator to be an essential term of the contract; rather, there is only the inference that the parties agreed in general to submit their claims to arbitration. Section 5 of the FAA provides the necessary remedy for naming a replacement arbitrator; thus, the trial court correctly held that the failure of this choice does not void the arbitration agreement. The petition for the writ of mandamus is therefore denied.
WRIT DENIED.
HOOPER, C.J., and MADDOX and HOUSTON, JJ., concur.
KENNEDY and SEE, JJ., concur in the result.
[1] It is unclear from the record what, if any, legal interest Debra Warren had in the property when this contract was executed; however, the record shows that the Warrens executed a warranty deed granting themselves a joint tenancy with right of survivorship.
[2] The FAA applies in a case involving a construction contract if materials manufactured outside the state are used in the construction. Ex Parte Costa Head (Atrium), Inc.,486 So.2d 1272 (Ala. 1986). It is undisputed that the materials used in the building of the Warrens' home were manufactured outside the state of Alabama. Additionally, the Warrens have not contended that the FAA is inapplicable to this contract.
[3] Count One alleges that the "defendant breached its contract with the plaintiffs by not constructing the home in a workmanlike manner and by not constructing the home within the time promised by the defendant." Count Two alleges:
 "The defendant . . . represented to the plaintiffs that their home would be constructed and ready within four months. The plaintiffs believed this representation and in reliance upon the same entered into a contract with the defendant to purchase the same." This claim is thus essentially one alleging fraud in the inducement of the contract.
[4] See Ex parte Dyess, 709 So.2d 447 (Ala. 1997) (nonsignatory plaintiff, who was a third-party beneficiary to an insurance policy containing an arbitration clause, could not both claim benefit of the contract and avoid the arbitration clause within it).