Tony's Towing, Inc., a defendant in an action pending in the Baldwin Circuit Court, petitions for a writ of mandamus directing Judge Robert Wilters to vacate his order granting the other defendants' motions to compel arbitration and to permit Deanna Powell Dunbar's claims against Tony's to proceed to trial. For the reasons discussed below, we grant the petition.
Deanna Powell Dunbar purchased a mobile home from Emerald Homes, Inc. Redman Homes, Inc., manufactured the mobile home. While Williams Mobile Home Service, Inc. ("Williams Inc."), was attempting to deliver the mobile home to Dunbar's property, it became stuck in a ditch. Tony's was called to assist in pulling the mobile home out of the ditch.
Dunbar was dissatisfied with the mobile home, which she alleged was improperly constructed and was damaged during delivery. She filed a 10-count complaint charging Emerald Homes, Redman Homes, Williams Inc., Dickey Williams (the president of Williams Inc.) (Williams and Williams Inc. are hereinafter collectively referred to as "the Williams defendants"), and Tony's with breach of contract, breach of warranty, fraud, and conversion. She also sought declaratory relief. The sales agreement between Dunbar and Emerald Homes contained an arbitration clause. Emerald Homes, the Williams defendants, and Redman Homes filed motions to compel arbitration. Tony's did not file a motion to compel arbitration. The trial court granted the motions and compelled arbitration as to all the defendants in a handwritten notation on the case action summary sheet that stated, "Arbitration is being ordered for judicial economy and for consistent verdicts." None of the parties has provided to us a copy of the document containing the arbitration clause; therefore, the precise language of the arbitration clause is not before us.
The Williams defendants and Dunbar oppose Tony's effort to avoid arbitration. They argue that pursuant to the doctrine of intertwining (that is, where nonarbitrable claims are considered so intimately founded in and closely related to claims that are subject to the arbitration agreement that the party opposing arbitration is equitably estopped to deny the arbitrability of the related claims), the trial court was correct in requiring all claims to be arbitrated. See Ex parte Stamey,776 So.2d 85, 89 (Ala. 2000). Dunbar also argues that Tony's was acting as an agent of the Williams defendants and Emerald Homes when it towed the mobile home and is therefore subject to have the claims against it submitted to arbitration. Dunbar then calls our attention to Ex parteGray, 686 So.2d 250 (Ala. 1996), in which this Court held that a party should not be able to avoid an arbitration agreement *Page 98 
merely by suing an employee of the principal rather than the principal.
The underlying rationale of this line of cases is that the doctrine of estoppel operates to prevent a signatory to an arbitration agreement from frustrating arbitration of a related claim against a nonsignatory wherethe nonsignatory seeks arbitration. In Hughes Masonry Co. v. GreaterClark County School Bldg. Corp., 659 F.2d 836, 838 (7th Cir. 1981), one of the early cases applying the principle, the United States Court of Appeals for the Seventh Circuit stated:
 "Hughes now argues, however, that it cannot be required to arbitrate because J.A. is not entitled to invoke the arbitration provision of the Hughes-Clark agreement since it is not a party to that agreement.
 "Whatever the merit of this argument, we believe Hughes is equitably estopped from asserting it in this case, because the very basis of Hughes' claim against J.A. is that J.A. breached the duties and responsibilities assigned and ascribed to J.A. by the agreement between Clark and Hughes [containing an arbitration clause]."
(Emphasis added.)
We have heretofore addressed the doctrine of intertwining in situations where a nonsignatory to an arbitration agreement seeks arbitration over the objection of the signatory. In this case a signatory to the arbitration agreement seeks arbitration over the objection of the nonsignatory. Dunbar argues that what is "sauce for the goose, is sauce for the gander." In other words, she argues that if a nonsignatory can compel a plaintiff to arbitrate, then denying the plaintiff the right to compel a nonsignatory defendant to arbitrate is unfair. However, this argument skips over the critical and essential element of estoppel as the basis for the theory of intertwining. Here, Tony's, as a nonsignatory, has never agreed to arbitrate anything and, therefore, it is not estopped from avoiding arbitration.
This very point was recently addressed in E.I. DuPont de Nemours Co. v. Rhone Poulenc Fiber Resin Intermediates, S.A.S., 269 F.3d 187
(3d Cir. 2001), where the United States Court of Appeals for the Third Circuit noted that one of the theories relied upon to obtain arbitration was that "courts have bound a signatory to arbitrate with a non-signatory `at the nonsignatory's insistence because of "the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations."'" 269 F.3d at 199 (quoting Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753, 757 (11th Cir. 1993)) (quoting in turn McBro Planning Dev. Co. v.Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir. 1984)). The Third Circuit then held:
 "With reference to the second theory of equitable estoppel, appellants rely on a series of cases in which signatories were held to arbitrate related claims against parent companies who were not signatories to the arbitration clause. In each of these cases, a signatory was bound to arbitrate claims brought by a non-signatory because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations. . . .
 "Appellants recognize that these cases bind a signatory not a non-signatory to arbitration, but argue that this is a *Page 99 
distinction without a difference. They are wrong.
 "Indeed, the Second Circuit recently rejected the same `distinction without a difference' argument:
 "`As these cases indicate, the circuits have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed. As the district court pointed out, however, "[t]he situation here is inverse: ES, as signatory, seeks to compel Thomson, a non-signatory." While ES suggests that this is a non-distinction, the nature of arbitration makes it important. Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so. In the line of cases discussed above, the courts held that the parties were estopped from avoiding arbitration because they had entered into written arbitration agreements, albeit with the affiliates of those parties asserting the arbitration and not the parties themselves. Thomson, however, cannot be estopped from denying the existence of an arbitration clause to which it is a signatory because no such clause exists. At no point did Thomson indicate a willingness to arbitrate with ES. Therefore, the district court properly determined these estoppel cases to be inapposite and insufficient justification for binding Thomson to an agreement that it never signed.'
 "Thomson-CSF, S.A. [v. American Arbitration Ass'n], 64 F.3d [773] at 779 [(2d Cir. 1995)] (internal citations omitted)."
269 F.3d at 201- 02 (some emphasis original; some emphasis added) (footnotes omitted). Dunbar and the Williams defendants are therefore not in a position to insist that Tony's submit to arbitration based upon the doctrine of intertwining.
Dunbar argues that the Alabama Rules of Civil Procedure dealing with joinder of claims and parties favor a single forum and that "the right to a single forum for all the parties outweighs the right of individual defendants to choose between a court setting and arbitration." (Dunbar's brief at p. 7.) This principle does not apply, however, because the basis for arbitration is the contract between Emerald Homes and Dunbar. As previously noted, we cannot force Tony's to arbitrate, over itsobjection, without defeating Tony's right to proceed in a judicial forum.
Dunbar also asserts that the defendants other than Tony's waived their right to demand arbitration. However, Dunbar did not petition for a writ of mandamus requesting us to direct the trial court to vacate its order granting those defendants' motions to compel arbitration; therefore, the issue of the arbitrability of her claims against Emerald Homes, the Williams defendants, and Redman Homes is not before us. Dunbar also asks us to direct the trial court as to how arbitration should be conducted in the event this Court grants Tony's petition and thereby permits Tony's liability to be determined in a judicial forum. Those matters are also not presently before us.
The trial court exhibited laudable concern for judicial economy and for avoiding inconsistent verdicts. Unfortunately, we cannot address those concerns without rewriting or, indeed, creating a contract calling for arbitration where none exists. Tony's has shown a right to the relief it seeks; therefore, its petition is due to be granted. *Page 100 
PETITION GRANTED; WRIT ISSUED.
Moore, C.J., and Houston, See, Brown, Johnstone, Harwood, Woodall, and Stuart, JJ., concur.