Alice CRAYTON, Plaintiff,

v.

CONSECO FINANCE CORP.—
ALABAMA, et al.,
Defendants.

Civil Action No. 02–A–683–E.

United States District Court,
M.D. Alabama,
Eastern Division.

Dec. 20, 2002.

Cecil G. Duffee, Duffee & Associates, LLC, Birmingham, AL, for plaintiff.

David A. Elliott, Micheal L. Hall, Paul P. Bolus, Janine L. Smith, Burr & Forman LLP, Birmingham, AL, for defendants.

Greentree Financial Corporation, St. Paul, MN, pro se.

Dadeville Home Center, Jacksons Gap, AL, pro se.

Edward Thomas, Jacksons Gap, AL, pro se.

## MEMORANDUM OPINION and ORDER

ALBRITTON, Chief Judge.

### Introduction

This cause is before the court on Defendant Conseco Finance Corp.—Alabama's Motion to Compel Arbitration, filed on June 13, 2002. (Doc. # 6) The Plaintiff originally filed this civil action in the Circuit Court for Tallapoosa County, Alabama, on May 13, 2002. In her Complaint, the Plaintiff charges the Defendants, to wit, Conseco Finance; Conseco Financing Servicing Corporation; Conseco Finance Corp.—Alabama; Dadeville Home Center; McDaniel Home Center; Edward Thomas; and Jimmy Yates, with fraud, breach of contract, negligent hiring and supervision, negligence, unjust enrichment, and conspiracy. The Defendants removed this action to this court on June 13, 2002, on the basis of federal question jurisdiction.[1] The court denied the Plaintiff's Motion to Remand on July 31, 2002. On October 31, 2002, the court dismissed Jimmy Yates as a defendant.

After carefully reviewing the submissions of the parties and the applicable law, the court finds that Conseco Finance Corp.—Alabama's Motion to Compel Arbitration is due to be DENIED.

### Arbitration Standard

Pursuant to the Federal Arbitration Act, a written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . . [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the Federal Arbitration Act allows a

---

1. The Plaintiff originally charged the Defendants with violating the federal Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* The Plaintiff later amended her complaint to dismiss the Magnuson–Moss claim. In its

order of July 31, 2002, denying the motion to remand, the court decided to retain jurisdiction over the Plaintiff's claims despite her deletion of her federal claim under the Magnuson–Moss Warrant Act.

"party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition the court "for an order directing that such arbitration proceed." 9 U.S.C. § 4. When a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

### Facts

The facts as presented in the submissions of the parties, viewed in a light most favorable to the nonmovant, are as follows:

On April 6, 1998, Frances Welcher, a non-party, purchased a manufactured home from the Dadeville Home Center in Dadeville, Alabama. Dadeville Home Center assigned the installment contract and security agreement to Conseco Finance Corp.—Alabama ("Conseco Finance"). The financing agreement between Conseco Finance and Welcher required Welcher to make monthly payments for twenty years to pay off the entire debt.

On August 17, 1998, Welcher sold the manufactured home to Maurice Crayton, a non-party who is not related to the Plaintiff. In completing the sale, Maurice Crayton signed a "Manufactured Home Transfer of Equity and Assumption Agreement" with Welcher and Conseco Finance, then known as Green Tree Financial Corp.—Alabama. The agreement contained an arbitration provision which stated:

All disputes, claims, or controversies arising from or relating to this Agreement or the parties thereto shall be resolved by binding arbitration by one arbitrator selected by [Conseco Finance] with [Maurice Crayton's] consent. This Agreement is made pursuant to a trans-

action in interstate commerce and shall be governed by the Federal Arbitration Act ... THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY MAY HAVE TO A JURY TRIAL ....

The agreement obligated Maurice Crayton to make payments for just under twenty years to pay off the loan balance.

Maurice Crayton did not or could not make the payments as scheduled under the agreement. By late December 1998, Maurice Crayton had missed five payments on the loan, and Conseco Finance and Dadeville Home Center were in the process of repossessing the manufactured home. At that time in December of 1998, Alice Crayton came to the Dadeville Home Center for the purpose of buying a trailer home. Alice Crayton learned from Edward Thomas ("Thomas") at the Dadeville Home Center that she did not qualify for financing to buy a new trailer. According to the Complaint, Thomas did tell her that he was in the process of repossessing a manufactured home from Maurice Crayton, and that she could take possession of the home by taking over Maurice Crayton's payments.

Specifically, according to Alice Crayton's version of the facts, the proposed contract was as follows: First, Alice Crayton would pay a deposit to Thomas and the Dadeville Home Center in the amount of $1399. This amount was equal to the five payments that Maurice Crayton was in arrears on his loan agreement with Conseco Finance. Second, Alice Crayton would begin making payments in the amount of $279.80 per month following Maurice Crayton's loan agreement with Conseco Finance. Third, after making payments for eighteen months, "the Mobile Home would be conveyed to her and title would then be in [Alice Crayton's] name." Complaint, p. 3, ¶ 4. Alternatively, Alice Cray-

ton testified in her deposition that Thomas told her that "I did not have enough credit built up to get [Maurice Crayton's manufactured home and financing plan], unless I paid on it for twelve to eighteen months and then it would become in my name after then." Alice Crayton Deposition, p. 34, lines 15–19. Alice Crayton accepted the agreement, and the home was transported to her lot and set up for her use.

According to the Complaint, Alice Crayton signed documentation to reflect this agreement with Thomas, Dadeville Home Center, and Conseco Finance. None of these alleged documents have been introduced by any of the parties in support of or in opposition to the Motion to Compel Arbitration. On December 29, 1998, Alice Crayton made the deposit payment of $1399 in cash to Thomas at the Dadeville Home Center. Alice Crayton began making monthly payments pursuant to her agreement with Thomas. She would make each payment by delivering a money order payable to Green Tree, later to Conseco, to Thomas at the Dadeville Home Center. She also paid thirty dollars a month in insurance in addition to the regular payment. The insurance account was in Maurice Crayton's name, and it remained in his name because Alice Crayton never made any request to change the name on the insurance account. Alice Crayton Deposition, p. 43, lines 3–5.

On June 29, 2000, after making payments pursuant to the agreement for eighteen months, Alice Crayton went to the Dadeville Home Center to ask Thomas if the account and title to the home had been transferred to her name. According to Alice Crayton, Thomas stated that the title and account had not been transferred. Thomas allegedly told her that the transfer would occur in a few months. One or two months after that conversation, Alice Crayton again spoke with Thomas about

her account. By that time, Thomas had sold the Dadeville Home Center and allegedly was uncooperative with Alice Crayton. According to Alice Crayton, she then called Conseco Finance and asked to have the account transferred to her name. In her Complaint, Alice Crayton alleges that representatives of Conseco Finance told her that she would be required to make another down payment in order to purchase the home and have it transferred to her name. Conseco Finance did not transfer the account to Alice Crayton.

After her conversation with Conseco Finance, Alice Crayton began receiving bills for her monthly payments at her post office box. The bills were addressed to Maurice Crayton. According to Alice Crayton, she informed Conseco Finance about her agreement with Thomas and told Conseco Finance that she was not related to Maurice Crayton. Despite her representations, Conseco Finance refused to transfer the account. Alice Crayton kept making payments on the account, even though the bills were addressed to Maurice Crayton.

Alice Crayton also went to the McDaniel Home Center, which had taken over the offices of the Dadeville Home Center. The new owners of the McDaniel Home Center had taken over Thomas' business. While there, Alice Crayton allegedly was told that she should have received a contract to memorialize her agreement with Thomas. Despite her efforts, Alice Crayton was not able to get the account and title to the home put in her name.

According to her deposition, Alice Crayton continues to make monthly payments on the home at the present time. The account remains in Maurice Crayton's name. After being unable to get the account placed in her name, Alice Crayton filed this lawsuit.

### Discussion and Analysis

 In *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Supreme Court explained that a court that is deciding whether the parties have agreed to arbitrate a certain matter should look to state law principles to analyze the arbitration provision. As a result, this court will apply Alabama law in deciding this Motion. The court also notes that Alice Crayton has not raised the argument that the Federal Arbitration Act does not apply to this arbitration provision. The court is satisfied that the claims at issue in this case involve "commerce" as defined in 9 U.S.C. § 1. Conseco Finance is a Delaware corporation, and Alice Crayton alleges that Conseco Finance engaged in a transaction with her through Thomas and the Dadeville Home Center. Accordingly, the arbitration agreement can be enforced pursuant to the Federal Arbitration Act if Alabama law recognizes that persons in Alice Crayton's position can be compelled to arbitrate their claims. *See Ga. Power Co. v. Partin,* 727 So.2d 2, 5 (Ala.1998) (explaining that ordinary contract principles under Alabama law determine whether an arbitration agreement can be enforced).

 Conseco Finance seeks to compel Alice Crayton to arbitrate her claims based on the arbitration provision contained in the Manufactured Home Transfer of Equity and Assumption Agreement signed by Maurice Crayton. Alice Crayton did not sign that agreement. It is undisputed that courts should enforce arbitration agreements pursuant to the general rules and standards of contract law. *Quality Truck & Auto Sales, Inc. v. Yassine,* 730 So.2d 1164, 1167–68 (Ala.1999). In *Cook's Pest Control, Inc. v. Boykin,* 807 So.2d 524, 526 (Ala.2001), the Alabama Supreme Court explained that:

"[A] party cannot be required to submit to arbitration any dispute he has not agreed to submit." It is the general rule that a nonsignatory to an arbitration agreement cannot be forced to arbitrate her claims.... Consequently, there are only two means by which [a nonsignatory] could be bound to arbitrate her claims.

(quoting *A.G. Edwards & Sons, Inc. v. Clark,* 558 So.2d 358, 362 (Ala.1990) (citations omitted)). The two means about which the court spoke are: (1) the nonsignatory is a third-party beneficiary of the contract containing an arbitration provision and (2) the nonsignatory's claims are "intertwined with" and "related to" the contract. *Id.* at 526–27.

 Under Alabama law, "[a] party claiming to be a third-party beneficiary of a contract must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party." *Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co.,* 619 So.2d 1328, 1329 (Ala. 1993). At the time that Frances Welcher, Maurice Crayton, and Conseco Finance entered into the Manufactured Home Transfer of Equity and Assumption Agreement in August of 1998, none of the parties intended to confer any benefit on Alice Crayton. She was not an intended third-party beneficiary of the agreement. *See Ex parte Stamey,* 776 So.2d 85, 92 (Ala. 2000) (intent of original contracting parties is a key factor in determining whether a third person is a third-party beneficiary of the original contract). Accordingly, Conseco Finance cannot rely on the first exception noted in *Boykin* to compel Alice Crayton to arbitrate her claims.

Conseco Finance has argued that, because Alice Crayton is suing for breach of contract, she is a third-party beneficiary to the agreement and cannot pick and choose

which provisions of the agreements she wants to enforce. In support of this, Conseco Finance relies on *Ex parte Jones*, 686 So.2d 1166 (Ala.1996),[2] *Capitol Chevrolet & Imports, Inc. v. Grantham*, 784 So.2d 285 (Ala.2000), *Ex parte Warren*, 718 So.2d 45 (Ala.1998), and *Infiniti of Mobile, Inc. v. Office*, 727 So.2d 42 (Ala.1999). These cases do not control the instant dispute. *Infiniti of Mobile* involved a wife's attempt to resist arbitration on a contract that her husband signed but that she did not. 727 So.2d at 48. The wife admitted in an affidavit, however, that she was relying on her status as a third-party beneficiary under the agreement signed by her husband to bring claims against Infiniti of Mobile based on that contract. *Id.* As noted above, Alice Crayton neither had a relationship with Maurice Crayton at the time he entered into the agreement nor has a relationship with him now. *Capitol Chevrolet* also involved a wife seeking to avoid arbitration on a contract signed by her husband, and the court concluded that she could not bring a claim against Capital Chevrolet under the contract her husband signed unless she was a third-party beneficiary of that contract. 784 So.2d at 289.

At this point it is helpful to outline exactly what contract Alice Crayton is alleging that the Defendants breached. From the Complaint and Alice Crayton's deposition testimony, the court concludes that Alice Crayton is suing over the agreement she reached with Thomas to take over Maurice Crayton's account.[3] As the court understands the agreement, Alice Crayton would make payments for eighteen months and then would have the account (and thus the Welcher–Maurice Crayton–Conseco Finance Manufactured Home Transfer of Equity and Assumption Agreement) put in her name. This is the contract that has been allegedly breached, not the Welcher–Maurice Crayton–Conseco Finance contract. In fact, Alice Crayton continues to make the payments that are scheduled under the Welcher–Maurice Crayton–Conseco Finance contract. In her breach of contract claim, Alice Crayton basically alleges that the Defendants failed to perform their end of the bargain, namely putting the account in her name.

The facts and circumstances giving rise to Alice Crayton's breach of contract claim distinguish her case from *Ex parte Warren*. In *Warren*, a Mrs. Warren resisted arbitrating her claims against a contractor. 718 So.2d at 47. However, the contractor and Mr. Warren, Mrs. Warren's husband, had entered into a home construction contract that contained an arbitration provision. *Id.* Mrs. Warren did not sign that agreement. *Id.* Mrs. Warren also claimed that she was neither a party to nor a third-party beneficiary to the contract her husband signed. *Id.* The Alabama Supreme Court stated that "Mrs. Warren has con-

2. In Conseco Finance's brief, counsel cites a quote from *Ex parte Jones*, evidently from Justice Maddox's dissent in *Jones*. However, after reviewing Justice Maddox's dissent in *Jones*, 686 So.2d at 1168–71, the court could not find the quote. However, the court did find the proper citation to the quote in *Tom Williams Motors, Inc. v. Thompson*, 726 So.2d 607, 609 (Ala.1998) (Maddox, J., dissenting). In all fairness, the quotation was immediately next to a citation to *Jones*. Regardless of the error, *Jones* is not helpful to Conseco Finance's argument. In *Jones*, the court refused to compel the plaintiffs to arbitrate claims against a defendant who was not a signatory to an arbitration agreement that the plaintiffs had with a second defendant. 686 So.2d at 1168. The court reached this conclusion despite the fact that the defendants had a contract with each other for insurance regarding the subject of the plaintiff's transaction. *Id.*

3. As the court reads the Complaint, Conseco Finance is allegedly liable under this agreement based on either an employer-employee, master-servant, or agency theory.

ceded that she has no right to recover under the contract, by disavowing any status as a party to the contract or as a third-party beneficiary." *Id.* Alice Crayton is claiming to be a party to a contract that should have placed the manufactured home account in her name after she made payments for eighteen months. As a party to such a contract, she can sue for breach, and, because the contract contains no arbitration agreement, she cannot be forced to arbitrate any disputes over that contract. *See AmSouth Bank v. Dees,* 835 So.2d 990 (Ala.2002) (if a party sues upon a contract that contains an arbitration provision, the party cannot avoid arbitration and, at the same time, seek damages under the contract); *see also Southtrust Bank v. Ford,* 835 So.2d 990 (Ala.2002) (administratrix of her parent's estate is not a third-party beneficiary of her parent's deposit agreement with defendant when she asserts claims in tort against the bank that are unrelated to the deposit agreement); *Stamey,* 776 So.2d at 92 ("[T]he third-party beneficiary cannot both claim the benefit of the contract and avoid the arbitration provision contained within that contract.").

From the face of her Complaint, Alice Crayton is not seeking the benefits of the Welcher–Maurice Crayton–Conseco Finance agreement. Instead, she is seeking to obtain damages for the breach of her agreement with Thomas and for other tortious acts allegedly committed by the Defendants.[4] Consequently, Alice Crayton is not a third-party beneficiary of the Welcher–Maurice Crayton–Conseco Finance agreement.

Under the second exception to the general rule against enforcing arbitration agreements against nonsignatory parties, the Alabama Supreme Court has determined that a nonsignatory's claims can be arbitrated if those claims are intertwined or related to the contract containing the arbitration agreement. *Boykin,* 807 So.2d at 527. The Court has construed this exception very narrowly. First, the arbitration agreement must be broad enough to "embrace intertwined claims." *Id.* Second, the Court has held that "a nonsignatory cannot require arbitration of a claim by the signatory against the nonsignatory when the scope of the arbitration agreement is limited to the signatories." *Id.* The *Boykin* Court specifically noted that while the facts of its case involved a signatory trying to force a nonsignatory to arbitrate claims against the signatory, the restriction still applies if the scope of the arbitration agreement limits the provision to the signatories. *Id.* In *Boykin,* the arbitration provision in the contract specifically limited the scope of the arbitration to disputes between the signatories. *Id.* Because the plaintiff was not a signatory to the agreement, the court refused to compel arbitration. *Id.*

The arbitration provision in the Welcher–Maurice Crayton–Conseco Finance contract also specifically limits arbitration to the "parties thereto" the agreement.[5]

---

4. Because Alice Crayton is suing on a separate contract from the Welcher–Maurice Crayton–Conseco Finance agreement, Conseco Finance's argument that the claims against it should be dismissed if Alice Crayton is not compelled to arbitrate her claims under the arbitration provision in the Welcher–Maurice Crayton–Conseco Finance agreement is without merit.

5. The full text of the provision at issue is as follows:

All disputes, claims or controversies arising from or relating to this Agreement or the parties thereto shall be resolved by binding arbitration by one arbitrator selected by you with my consent. This Agreement is made pursuant to a transaction in interstate commerce and shall be governed by the

The agreement contains no provision for extending the arbitration provision to any person who is not a party or to any person who may become a party through an assignment or transfer of the agreement. Furthermore, in *Ex parte Tony's Towing, Inc.*, 825 So.2d 96, 98–99 (Ala.2002), the Alabama Supreme Court explained that the doctrine of intertwining and equitable estoppel is only applicable when a nonsignatory seeks to compel a signatory to arbitrate. When the situation is reversed, as it is in this case, and a signatory is trying to compel a nonsignatory to arbitrate on the basis that the claims at issue are intertwined with the contract containing the arbitration clause, the Court held that arbitration cannot be compelled. *Id.* The *Tony's Towing* court quoted extensively from the Third Circuit's opinion in *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 201–02 (3d Cir.2001):

> With reference to the second theory of equitable estoppel, appellants rely on a series of cases in which signatories were held to arbitrate related claims against parent companies who were not signatories to the arbitration clause. In each of these cases, a signatory was bound to arbitrate claims brought by a non-signatory [sic] because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations . . . .

*Appellants recognize that these cases bind a signatory and not a non-signatory [sic] to arbitration, but argue that this is a distinction without a difference. They are wrong.*

Indeed, the Second Circuit recently rejected the same "distinction without a difference" argument:

> "As these cases indicate, the circuits have been willing to estop a signatory from avoiding arbitration with a non-signatory when the issues the nonsignatory is seeking to resolve in arbi-

Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this Agreement. The parties agree that the arbitrator shall have all powers provided by law, by the Agreement and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligations secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this Agreement, including the filing of a counterclaim in a suit brought by you pursuant to this provision.

tration are intertwined with the agreement that the estopped party has signed. As the district court pointed out, however, 'the situation here is inverse: E & S, as signatory, seeks to compel Thomson, a nonsignatory.' While E & S suggests that this is a non-distinction, the nature of arbitration makes it important. *Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so. In the line of cases discussed above, the courts held that the parties were estopped from avoiding arbitration because they had entered into written arbitration agreements, albeit with the affiliates of those parties asserting the arbitration and not the parties themselves. Thomson, however, cannot be estopped from denying the existence of an arbitration clause to which it is a signatory because no such clause exists.* At no point did Thomson indicate a willingness to arbitrate with E & S. Therefore, the district court properly determined these estoppel cases to be inapposite and insufficient justification for binding Thomson to an agreement that it never signed."

*Thomson–CSF, S.A. [v. American Arbitration Ass'n,]* 64 F.3d [773] at 779 [(2d Cir.1995) ] (internal citations omitted).

(some emphasis original; some emphasis added) (footnotes omitted). Following the rationale of the *Tony's Towing* court, even if the claims that Alice Crayton asserts against Conseco Finance are intertwined with the Welcher–Maurice Crayton–Conseco Finance agreement that contains an arbitration provision, Conseco Finance cannot compel Alice Crayton, a non-signatory, to arbitrate her claims. *See SouthTrust Bank,* at 994 (following

*Tony's Towing* and stating that "the doctrine of estoppel [intertwining] is applicable only to estop a *signatory* from avoiding arbitration").

## ORDER

The court concludes that Conseco Finance cannot compel Alice Crayton, a non-signatory to the Welcher–Maurice Crayton–Conseco Finance agreement, to arbitrate her claims. Accordingly, Conseco Finance's Motion to Compel Arbitration is due to be and hereby is ORDERED DENIED.