MURDOCK, Justice
(dissenting).
I respectfully dissent. I see no basis in the text of the parties’ arbitration agreements for concluding that the provision in the agreements that a party may demand arbitration by making a filing with the Better Business Bureau of North Alabama (“the BBB”) establishes a requirement that such a claim be arbitrated with the BBB that is “an integral and essential part” of the parties’ contract that, if incapable of being performed, undermines the parties’ more fundamental agreement to arbitrate their disputes. This is especially true given the strong federal policy in favor .of arbitration upon which .this Court has frequently relied.
The arbitration agreements executed by Beverly Hardeman, Vivian Roberts, and Jim Bishop Buick and Jim' Bishop Toyota, the predecessor dealerships to University Toyota and University Chevrolet Buick GMC (“the University dealerships”), require them to resolve disputes “concerning or relating to ... service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle ... by binding arbitration.” Although those agreements subsequently set forth a procedure for initiating an arbitration proceeding—“[ejither party may demand arbitration by filing with the [BBB] ... a written demand for arbitration”—nothing in the arbitration agreements explicitly states that only the BBB may conduct the *402 arbitration. At a minimum, nothing in the agreements states that the- agreement to arbitrate is a nullity if the organization chosen to conduct the arbitration is unable to do so.
This Court often has acknowledged, and espoused, that the policy in favor of arbitration imposed by the Federal Arbitration Act (“the FAA”) is a strong one, See, e.g., Ocwen Loan Servicing, LLC v. Washington, 939 So.2d 6, 14 (Ala. 2006) (noting that the United States Supreme Court recognized a strong federal policy favoring arbitration and that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration); Ameriquest Mortg. Co. v. Bentley, 851 So.2d 458, 463 (Ala. 2002); Auto Owners Ins., Inc. v. Blackmon Ins. Agency, Inc., 99 So.3d 1193, 1196 (Ala. 2012). See generally Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Consistent with this policy, in Robertson v. Mount Royal Towers, 134 So.3d 862, 863 (Ala. 2013), when the chosen arbitrator was not available, the Court nonetheless said that arbitration must go forward with the trial'court filling the gap.
I disagree’with the main opinion that this case is distinguishable from cases like Robertson, in which the parties executed a predispute arbitration agreement that did not name a forum for arbitration, Even reading the parties’ agreements, as designating the BBB as the forum for arbitration, once that forum became unavailable, a gap was effectively created, just as in Robertson, that was left to be filled by the trial court. Nothing in the arbitration agreements states that the use of arbitration will be contingent upon the availability of the BBB as the forum. And any effort somehow to glean this intent from the language of the agreements (which, in my view, would fail in any event) is made that much more difficult by the strong federal policy in favor of arbitration. In short, as was the case in Robertson, and especially in the context of the strong federal policy favoring arbitration, I do not find in the language of the parties’ agreements any language that allows me to agree with the main opinion that the agreements indicate that the identity of the arbitrator was “an integral and essential part” of their agreements to arbitrate.
In fact, the indistinguishability of this case from Robertson is borne out by this Court’s decision in Ex parte Warren, 718 So.2d 45 (Ala. 1998). In Warren, as in the present case (according to. the University dealerships’ reading of the arbitration agreements), the arbitration agreement specified a particular arbitrator but, as in the present case, the designated arbitrator was not available to conduct the arbitration. Nonetheless, as in Robertson, the parties’ agreement to arbitrate was upheld, The Warren opinion reasons as follows:
“The Warrens next argue that the arbitration agreement is void because the arbitrator that it specifies ... is no longer in existence....
“Under the Federal Arbitration Act, the fact that an arbitrator named in the arbitration agreement is unable to act as an arbitrator over the parties’ controversy does not necessarily void the arbitration agreement'.,..

ttt >

“Based upon § 5 [of the FAA], federal courts have established the general rule that, where the arbitrator named in. the arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement but instead appoints a different arbitrator. Astra Footwear Industry v. Harwyn Int’l Inc., 442 F.Supp. 907 (S.D. N.Y. 1978);. see, also, *403 McGuire, Cornwell & Blakey v. Grider, 771 F.Supp. 319 (D. Colo. 1991)....
“However, the federal courts have also recognized an exception to the general rule: where it is clear that a specific failed term of an arbitration agreement is not, an ancillary logistical concern but, rather, is as important a consideration as the arbitration agreement itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail. Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 742 F.Supp. 1359 (N.D. Ill. 1990).”
718 So.2d at 48. The Warren "opinion then proceeds to uphold the parties’ arbitration agreement despite the unavailability of the designated arbitrator, citing, inter alia, McGuire, Cornwell & Blakey v. Grider, 771 F.Supp. 319 (D. Colo. 1991); for the proposition that “where there was no indication that the naming of a specific arbitrator was central to the parties’ agreement to arbitrate, the named arbitrator’s unwillingness to arbitrate the parties’ dispute did not void the arbitration agreement.” 718 So.2d at 48-49. It appears to' the that the same proposition applies to the present case.
The main opinion takes issue with the proposition that the BBB is unavailable to arbitrate this matter because, it posits, the parties have no right to engage in class-arbitration proceedings in the first place. Because the only type of claim that may be arbitrated, according to the main opinion, is the individual claim of each plaintiff, and because the BBB is available to arbitrate such a claim, the BBB is not “unavailable.” In this regard, the main opinion states:
“To the extent the dissent is concluding that the BBB forum- is unavailable because of the BBB’s policy not to conduct class-action arbitration, we disagree. Hardeman and Roberts have no right to engage in class-action arbitration proceedings .... ”
228 So.3d at 400.
But the question whether Hardeman and Roberts have á right to engage in class-action arbitration is itself, as the trial court held, a question for the arbitrator. As Hardeman and Roberts-point out, their contracts with the University dealerships expressly state that “any question regarding whether a particular controversy is subject to arbitration shall be decided by the arbitrator.” Compare, e.g., Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050, 1054 (Ala. 2007); Polaris Sales, Inc. v. Heritage Imports, Inc., 879 So.2d 1129, 1133-34 (Ala. 2003).
And, contrary to the main opinion, existing precedents do not 'establish that the proper answer to the question of arbitra-bility 'necessarily turns on the lack of any verbiage in the parties’ agreements expressly authorizing the arbitration of such claims. It is certainly true that the United States Supreme Court made a couple of statements in Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 559 U.S. 662, 687, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), that, at first glance, might appear to indicate that arbitration of class claims requires contractual language that expressly provides for the arbitration of such claims. For example, the Court stated: '
“An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties’ agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented, to it by simply agreeing to submit their disputes to an arbitrator.”
559 U.S. at 685. Later in the opinion the Court concluded: “We think that the differences between bilateral and class-action *404 arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties’ mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings.” 559 U.S. at 687.
But, in actuality, the Stolt-Nielsen opinion is one that merely holds—and this really was nothing novel but, instead, was the application of a very basic principle— that the arbitrators could not decide to arbitrate class claims, as they attempted to do, without basing that decision on some contractual agreement by the parties to do so. In Stolt-Nielsen, the arbitration panel actually undertook to arbitrate the class claims in deference to policy concerns, not based on a contractual agreement, express or implied, for the arbitration of such claims. The panel was forced to resort to such policy concerns as the basis for its decision because—and this is the distinguishing characteristic of Stolt-Nielsen— the parties had actually stipulated to the arbitration panel that they did have any agreement between themselves on this issue. In effect, the parties actually stipulated that their arbitration agreement could not be read as either expressly or implicitly providing for arbitration of class claims.
The Stolt-Nielsen Court explained-itself as follows:
“The parties selected a panel of arbitrators and stipulated that the arbitration clause was ‘silent’ with respect to class arbitration. Counsel for Animal-Feeds explained to the arbitration panel that the term ‘silent’ did not simply mean that the clause made no express reference to class arbitration. Rather, he said, ‘[a]ll the parties agree that when a contract is silent on an issue there’s been no agreement that has been reached on that issue.’ ”
[[Image here]]
“Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must ‘give effect to the contractual rights and expectations of the parties.’ Volt [Information Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468] at 479 [ (1989) ]. In this endeavor, ‘as with any other contract, the parties’ intentions control.’ Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). This is because an arbitrator derives his or her powers from the parties’ agreement to forgo the legal process and submit their disputes to private dispute resolution. See AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648-649 (1986) (‘[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration’)....
[[Image here]]
“From these principles, it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so. In this case, however, the arbitration panel imposed class arbitration .even though the parties concurred that they had reached ‘no agreement’ on that issue .... The panel’s conclusion is fundamentally at war with the foundational FAA principle that arbitration is a matter of consent.”
559 U.S. at 668-69, 682-84 (some emphasis added).
As the United States Court of Appeals for the Second Circuit noted in Jock v. Sterling Jewelers Inc., 646 F.3d 113 (2d Cir. 2011):
*405 “The [Supreme] Court’s interpretation of the parties’ ‘silence’ is key. Our dissenting colleague states that he believes the ‘silence’ in Stolt-Nielsen was interpreted as ‘simply reflect[ing] the fact each party recognized the arbitration clause neither specifically authorized nor specifically prohibited class arbitration.’ Dissenting Op. at 128 (citing Brief for Respondent at 26, Stolt-Nielsen ...). The dissent, however, fails to acknowledge that although' that is the interpretation that the Respondent in Stolt-Nielsen wishe’d the Court to adopt, that is not the interpretation that the Court did adopt. To the contrary, the Court interpreted the stipulated silence to mean that ‘the parties agreed their agreement was “silent” in the sense that they had not reached any agreement on the issue of class arbitration.’ Stolt-Nielsen, 130 S.Ct. at 1768. See also id. at 1766 (‘The parties ... stipulated that the arbitration clause was “silent” with respect to class arbitration. Counsel for [the Respondent] explained to the arbitration panel that the term “silent”- did not simply mean that the clause made no express reference to class arbitration. Rather, he said, “[a]ll the parties agree that when a contract is silent on an issue there’s been no agreement that has been reached on the issue.” ’). The Court further noted that ‘parties were in complete agreement regarding their intent.’ Id. at 1770. That is to say, according to the majority in StollANielsen, there was no express or implicit intent to submit to class arbitration. Indeed, the dissent in Stolt-Nielsen pointed out that the majority’s interpretation of ‘silence’ was incongruous with the Respondent’s interpretation. Id. at 1781 (Ginsburg, J., dissenting) .... ”
646 F.3d at 120 (some emphasis added).
In other words, the facts before the Supreme Court in Stolt-Nielsen involved a unique situation in which the parties had stipulated that they there was no agreement between them—express or implied— regarding the arbitrability of class claims. Because of this, the Jock court concluded in the case before it that “[t]he plaintiffs’ concession that there was no explicit agreement to permit class arbitration ... is not the same thing as stipulating that the parties had reached no agreement on the issue.” 646 F.3d at 123 (emphasis added).
The United States Court of Appeals for the Fifth Circuit in Reed v. Florida Metropolitan University, Inc., 681 F.3d 630 (5th Cir. 2012), reached the opposite conclusion about what Stolt-Nielsen meant. The Fifth Circuit surmised that an agreement stating that “any dispute” could be arbitrated could not be interpreted as implicitly permitting arbitration of class claims because the agreement, did , not expressly discuss such claims. The Fifth Circuit concluded: “At most, the agreement in this case could support a finding that the parties did not preclude class arbitration, but under Stolt-Nielsen this is not. enough.” Id. at 644.
After Jock and Reed were decided, the Supreme Court decided Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 133 S.Ct. 2064, 186 L.Ed.2d 113 (2013). Sutter involved a putative class action in state court by physicians who alleged that Oxford had failed to make “full and prompt” payment in violation of their agreements and state laws. Oxford moved to compel arbitration pursuant to a clause in the agreements, and the state court granted the motion. The arbitrator allowed the arbitration to proceed on a class basis, on the ground that the agreement permitted in arbitration everything that it prohibited from being brought in court. In the arbitrator’s view, because class action “is plainly one of the possible forms of civil action *406 that could be brought in a court,” but had been prohibited by the agreement from being brought in court, it must be permitted in arbitration. 569 U.S. 567, 133 S.Ct. at 2067. While the arbitration proceeded, the United -States Supreme Court issued its- ruling in Stolt-Nielsen, and Oxford asked the arbitrator to reconsider his class-arbitration decision. The arbitrator issued a new opinion holding that Stolt-Nielsen had no effect because, unlike the parties in Stolt-Nielsen, the parties before him disputed the meaning of their contract, and, in his view the agreement authorized class arbitration. On appeal, the district court declined to vacate the arbitrator’s decision, and the United States Court of Appeals for the Third Circuit affirmed it.
The United States ' Supreme Court granted certiorari to address the split among the Second, Third, and Fifth Circuits on the issue whether an arbitrator who has'allowed class arbitration ’ in circumstances in which the agreement is silent on the matter “exceeded [his] powers” under § 10(a)(4) of the FAA. In unanimously affirming the judgment of the Third Circuit, the Supreme Cpurt.ruled that, under § 10(a)(4), the “sole question” for a reviewing court is whether the decision as to arbitrability is based in the parties’ contract: the “sole question” “is not whether the arbitrator construed the parties’ contract correctly, but whether he construed it at all.” 569 U.S. 573, 133 S.Ct. at 2071. The Court specifically emphasized that
“[w]e overturned the arbitral decision [in Stolte-Nielsen] because it lacked any contractual basis for ordering class procedures, not because it lacked, in Oxford’s terminology, a ‘sufficient’ one. The parties in Stolt-Nielsen had entered into an unusual stipulation that they had never reached an agreement on class arbitration. See 559 U.S. at 668-669. In that circumstance, we noted, the panel's decision- was not—indeed, could not have been—‘based on á determination regarding thé parties’ intent,’ Id., at 673 n.4.”
669 U.S. 571, 133 S.Ct. at 2069.[3]
. The, main opinion quotes Chambers v. Groome Transportation of Alabama, 41 F.Supp.3d 1327, 1350 (M.D. Ala. 2014), as summarizing, Alabama’s position on, the matter. And, indeed, this Court has stated: “[C]lass-wide arbitration is not permitted absent an agreement permitting disposition of claims on such a basis ....,” Leonard v. Terminix Int’l Co., L.P., 854 So.2d 529, 535 n.2 (Ala. 2002) (citing Med Ctr. Cars, Inc. v. Smith, 727 So.2d 9, 20 (Ala. 1998) (emphasis added)). This Court’s very few pronouncements- on the issue, however, do not go further than do the pronouncements of the United States Supreme Court and, in particular, do not hold that an-intent by the parties to provide for the disposition of class claims through arbitration may be found only in express contractual language to-that-effect and may not be implied fi’om more general contractual language providing for the arbitration of disputes.
In accordance with the foregoing, I am compelled to conclude that the trial court did not err in consigning to the arbitrator the question' of' arbitrability presented here or in designating an arbitrator other than the BBB in this regard.

. See Stuart Boyarsky', Silence Is Golden: How Oxford Health Affects Class Arbitration; 20 westlawjoumalclassaction 1 (August 23, 2013), for a succinct summary of federal case history on this issue.